## UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF OKLAHOMA

KIMBERLY GRAHAM,                        )
                                        )
          Petitioner,          )
                                        )
v.                                      )          Case No. 23-CV-0164-CVE-SH
                                        )
TAMIKA WHITE, Warden,                   )
                                        )
          Respondent.          )

## OPINION AND ORDER

Before the Court is petitioner Kimberly Graham's 28 U.S.C. § 2254 petition for writ of habeas corpus filed April 25, 2023 (Dkt. # 1). Having considered the petition, the response in opposition to the petition (Dkt. # 8), the reply brief (Dkt. # 9), and applicable law,[1] the Court concludes that Graham is in state custody in violation of her Fourteenth Amendment right to due process. The Court therefore grants the petition and directs White to immediately release Graham from state custody.

## I.

Graham brings this action to challenge the lawfulness of her custody under the reinstated judgment and sentence entered against her in April 2023, in Tulsa County District Court Case No. CF-2007-5987. Dkt. # 1, at 1; Dkt. # 8-14.[2] In that case, Graham was sentenced, in September 2009, to serve 107 years in custody of the Oklahoma Department of Corrections ("ODOC")

---

[1] As appropriate, the Court also takes judicial notice of state court records that are available to the public through the Oklahoma State Courts Network (https://www.oscn.net). See St. Louis Baptist Temple, Inc. v. FDIC, 605 F.2d 1169, 1172 (10th Cir. 1979) ("[F]ederal courts, in appropriate circumstances, may take judicial notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue.").

[2] For consistency, the Court's citations refer to the CM/ECF header pagination.

following her convictions as to five counts of first-degree manslaughter, in violation of OKLA. STAT. tit. 21, § 711 (2001), and one count of leaving the scene of a fatality accident, in violation of OKLA. STAT. tit. 47, § 10-102.1 (2001).  Dkt. # 8-5, at 1.  The Oklahoma Court of Criminal Appeals ("OCCA") affirmed Graham's judgment and sentence on August 31, 2011.  Id. at 1, 7. Graham did not seek further direct review by filing a petition for writ of certiorari in the United States Supreme Court ("Supreme Court").  Dkt. # 8, at 2 n.4.  Her judgment became final on November 30, 2011.  Dkt. # 8-9, at 4.

On November 21, 2012, Graham applied for postconviction relief in the Tulsa County District Court ("TCDC"), under Oklahoma's Post-Conviction Procedure Act, OKLA. STAT. tit. 22, §§ 1080-1088.1 (2022).  Dkt. # 1-2, at 109; Dkt. # 8, at 2.  The TCDC did not order a response or take any other action on Graham's application.[3]  Dkt. # 8-9, at 2.  On August 30, 2017, Graham supplemented her pending application with a new claim.  Dkt. # 1-2, at 109; Dkt. # 8, at 2; Dkt. # 8-6, at 1; see OKLA. STAT. tit, 22, § 1086 (2022) ("All grounds for relief available to an applicant under this act must be raised in his original, supplemental or amended application.").  She claimed that the state did not have jurisdiction to prosecute her because she is Indian and she committed the crimes for which she was convicted within the boundaries of the Muscogee (Creek) Nation Reservation ("Indian-country jurisdiction claim").  Dkt. # 8-6, at 1-4.

---

[3] Under Oklahoma law, a district court clerk must docket an application for postconviction relief "upon its receipt and promptly bring it to the attention of the court and deliver a copy to the district attorney."  OKLA. STAT. tit. 22, § 1081 (2022).  "Within thirty (30) days after the docketing of the application, or within any further time the court may fix, the state shall respond by answer or by motion which may be supported by affidavits" and the court may dispose of application "on the pleadings" unless "there exists a material issue of fact."  OKLA. STAT. tit. 22, § 1083 (2022).

Because Graham asserted her Indian-country jurisdiction claim at the beginning of what proved to be a fundamental shift in the understanding of how criminal jurisdiction is allocated among tribal, state, and federal authorities in Oklahoma—and because that shift is central to the Fourteenth Amendment claim she presents in this habeas action—the Court discusses the procedural history of Graham's quest for postconviction relief in the context of legal developments related to her claim and state laws governing postconviction relief.

As legal support for her Indian-country jurisdiction claim, Graham cited 18 U.S.C. §§ 1151-1153, Solem v. Bartlett, 465 U.S. 463 (1984), and Murphy v. Royal, 866 F.3d 1164 (10th Cir. Aug. 8, 2017), amended and superseded on denial of reh'g by 875 F.3d 896 (10th Cir. Nov. 9, 2017) ("Murphy I"), aff'd sub nom. Sharp v. Murphy, 140 S. Ct. 2412 (2020) ("Murphy II"). Dkt. # 8-6, at 1-4.  In Murphy I, the United States Court of Appeals for the Tenth Circuit ("Tenth Circuit") considered a habeas petitioner's Indian-country jurisdiction claim that was first raised in state court through a second postconviction appeal.  875 F.3d at 907-09.  Applying Bartlett, the Tenth Circuit held that because Congress has not disestablished the Muscogee (Creek) Nation Reservation, the land within the boundaries of that reservation is "Indian country" for purposes of the Major Crimes Act, 18 U.S.C. § 1153 ("MCA").  Murphy I, 875 F.3d at 966.[4]  Under § 1153(a), only the federal government has jurisdiction to prosecute certain crimes, including manslaughter, that are committed by Indians within "Indian country."  See McGirt v. Oklahoma, 140 S. Ct. 2452, 2478 ("[T]he MCA applies to Oklahoma according to its usual terms: Only the federal government,

---

[4] The Tenth Circuit stayed issuance of the mandate in Murphy I for 90 days or until the deadline passed for filing a petition for writ of certiorari.  The respondent in that case filed a petition for writ of certiorari, and the Supreme Court granted that petition in May 2018.  Royal v. Murphy, 138 S. Ct. 2606 (May 21, 2018).

not the State, may prosecute Indians for major crimes committed in Indian country."); id. at 2480 ("When Congress adopted the MCA, it broke many treaty promises that had once allowed tribes like the Creeks to try their own members. But, in return, Congress allowed only the federal government, not the States, to try tribal members for major crimes."); see also 18 U.S.C. § 1151 (defining "Indian country"). As factual support for her claim, Graham attached to her application evidence showing that she has a degree of Indian blood and that she is a member of the Cherokee Nation.[5] Dkt. # 8-6, at 6. The TCDC did not order a response or take any other action on Graham's supplemental application until July 17, 2020, after the Supreme Court issued two decisions central to her Indian-country jurisdiction claim. Dkt. # 8-9, at 2.

On July 9, 2020, the Supreme Court issued decisions in McGirt v. Oklahoma, 140 S. Ct. 2452 (2020), and Murphy II. In McGirt, an Oklahoma prisoner petitioned the Supreme Court for a writ of certiorari to review the OCCA's decision denying his application for postconviction relief. See McGirt v. Oklahoma, 140 S. Ct. 659 (Dec. 13, 2019) (granting petition for writ of certiorari). Like the habeas petitioner in Murphy I, the prisoner in McGirt claimed that because he is Indian, the federal government, not the state, should have prosecuted him for major crimes he committed within the boundaries of the Muscogee (Creek) Nation Reservation. McGirt, 140 S. Ct. at 2459; Murphy I, 875 F.3d at 928. The question presented in McGirt was narrow: whether the land promised to the Muscogee (Creek) Nation through treaties signed by the United States government

---

[5] Because the relevant federal statutes do not define the term "Indian," the Tenth Circuit applies a two-part test to determine if a criminal defendant is Indian. That test "ask[s] whether 'the defendant (1) has some Indian blood; and (2) is recognized as an Indian by a tribe or by the federal government." United States v. Nowlin, 555 F. App'x 820, 823 (10th Cir. 2014) (quoting United States v. Prentiss, 273 F.3d 1277, 1280 (10th Cir. 2001)).

in 1832 and 1833 "remains an Indian reservation for purposes of federal criminal law." 140 S. Ct. at 2459. The <u>McGirt</u> Court held that because Congress did not disestablish the Muscogee (Creek) Nation Reservation the land within the historical boundaries of that reservation is "Indian country," as defined in 18 U.S.C. § 1151(a), and, as a result, the federal government has exclusive jurisdiction, under the MCA, to prosecute certain crimes committed by Indians within those boundaries. <u>McGirt</u>, 140 S. Ct. at 2468, 2479-80. Relying on its decision in <u>McGirt</u>, the Supreme Court in <u>Murphy II</u> summarily affirmed the Tenth Circuit's decision in <u>Murphy I</u>. <u>Murphy II</u>, 140 S. Ct. at 2412. While the question in <u>McGirt</u> was narrow, the impact of its decision was broad. As the <u>McGirt</u> Court explained, Oklahoma had been prosecuting Indians for crimes committed in Indian country since statehood, despite the "plain terms" of the MCA. 140 S. Ct. at 2476-78. The <u>McGirt</u> Court recognized that its decision "risk[ed] upsetting some convictions," but reasoned that "[o]ther defendants who do try to challenge their state convictions may face significant procedural obstacles, thanks to well-known state and federal limitations on postconviction review in criminal proceedings." <u>Id.</u> at 2479-80.

On July 17, 2020, the TCDC ordered a status conference on Graham's application for postconviction relief. Dkt. # 1-2, at 110. The state filed a response on October 2, 2020, and, over the next several months, both parties filed additional briefs and motions focusing solely on Graham's Indian-country jurisdiction claim. <u>Id.</u> at 110-11. The state's primary argument was that Graham's claim was procedurally barred, either because she waived it by failing to raise it on direct appeal or because the doctrine of laches barred relief. Dkt. # 8-10, at 14.

On March 11, 2021, the OCCA decided an Indian-country jurisdiction claim asserted by a non-Indian Oklahoma prisoner who had been sentenced to death. Dkt. # 9-2 (<u>Bosse v. State</u>, 484 P.3d 286 (Okla. Crim. App. Mar. 11, 2021) ("<u>Bosse I</u>"), <u>corrected</u> (Mar. 19, 2021) ("<u>Bosse I</u>"),

5

withdrawn, and superseded by 499 P.3d 771 (Okla. Crim. App. Oct. 7, 2021) ("Bosse II"), cert.

denied, 142 S. Ct. 1136 (2022)).[6]  Applying McGirt's reasoning, the OCCA held, in a published

opinion, that Congress did not disestablish the Chickasaw Reservation.  Id. at 5-10.  Based on that

holding, the OCCA granted postconviction relief to the prisoner who, like Graham, sought

postconviction relief to invalidate convictions that were final before McGirt was decided, and the

OCCA remanded the case to the state district court with directions to dismiss.[7]  Id. at 1, 16-19, 23-

24.  Significantly, in Bosse I, the OCCA rejected the state's position that the Indian-country

jurisdiction claim was procedurally barred through waiver or by the doctrine of laches.  Id. at 16-

19.  The OCCA reasoned that it had "repeatedly held that the limitations of post-conviction or

subsequent post-conviction statutes do not apply to claims of lack of jurisdiction," and the OCCA

expressly stated that "McGirt provides a previously unavailable legal basis for [the Indian-country

jurisdiction] claim."  Id. at 18-19.  The OCCA stayed issuance of the mandate in Bosse I for twenty

days, or until March 31, 2021.  Id. at 24.  On March 31, 2021, the OCCA continued the stay of the

issuance of the mandate in Bosse I, pending its ruling on the state's motion for leave to file a

petition for rehearing.  Id.  On April 7, 2021, the OCCA denied the state's petition for rehearing,

_____

[6] Because the OCCA withdrew its published opinion in Bosse I, that opinion is no longer available to the public.  Graham provided a copy of the withdrawn opinion (Dkt. # 9-2) with her reply brief.  When discussing Bosse I the Court therefore cites the copy Graham provided, using the CM/ECF header pagination.

[7] As previously stated, the defendant in Bosse I was not Indian, but the victims of his crime were Indians.  Dkt. # 9-2, at 5.  In Bosse I, the OCCA rejected the state's argument that Oklahoma and has concurrent jurisdiction to prosecute non-Indian defendants who commit crimes in Indian country against Indian victims.  Id. at 19-23.  The Supreme Court has since held otherwise.  See Oklahoma v. Castro-Huerta, 142 S. Ct. 2486, 2504-05 (2022) ("We conclude that the Federal Government and the State have concurrent jurisdiction to prosecute crimes committed by non-Indians against Indians in Indian country.").

6

reasoning that a petition for rehearing is not permitted following the OCCA's decision in a postconviction appeal, and issued the mandate in Bosse I.  Dkt. # 1-1, at 61; see also Docket Sheet, Bosse v. State, https://www.oscn.net/dockets/GetCaseInformation.aspx?db=appellate&number=PCD-2019-124&cmid=125798, last visited June 21, 2023 (orders entered April 7, 2021, denying motion for leave to file petition for rehearing and issuing mandate); Rule 5.5, Rules of the Oklahoma Court of Criminal Appeals, Title 22, Ch. 18, App. (2022) ("Once [the OCCA] has rendered its decision on a post-conviction appeal, that decision shall constitute a final order . . . . A petition for rehearing is not allowed . . . .").

Under Oklahoma law, Bosse I was a final decision on April 7, 2021, and state district courts could rely on that decision "as authority."   See Rule 1.0(B), Rules of the Oklahoma Court of Criminal Appeals, Title 22, Ch. 18, App. (2022) ("The Rules set forth in Sections I, II, and III shall apply in all appeals, unless a specific provision to the contrary appears in the Sections governing specific appeals."); Rule 3.15, Rules of the Oklahoma Court of Criminal Appeals, Title. 22, Ch. 18, App. (2022) (governing issuance of mandate); Rule 3.13(B), Rules of the Oklahoma Court of Criminal Appeals, Title 22, Ch. 18, App. (2022) (providing that "official versions of the published decisions of the [OCCA]" "will become official and may be used as authority, when the mandate in the matter has issued and/or upon placement of the Court's official seal at the beginning of the decision when filed with the Clerk of this Court"); Rule 9.1, Rules of the Oklahoma Court of Criminal Appeals, Title 22, Ch. 18, App. (2022) (providing that Rule 9.7 governs procedures for postconviction appeals in capital cases and further providing that "[i]f a particular issue is not addressed in [Section IX], the Rules set forth in Sections I, II, III, IV, and V are applicable and shall be followed").  However, two days later, on April 9, 2021, the OCCA granted the state's emergency motion and temporarily recalled the mandate in Bosse I.  Id. at 63-64.  A few days

later, the OCCA stayed issuance of the mandate in <u>Bosse I</u> for 45 days.  <u>Bosse II</u>, 499 P.3d at 774.

The Supreme Court "subsequently stayed the issuance of mandate [in <u>Bosse I</u>] on May 26, 2021,

and the state filed a petition for writ of certiorari on August 6, 2021."  <u>Id.</u>

Meanwhile, in Graham's case, on March 11, 2021, the same day that the OCCA published

its opinion in <u>Bosse I</u>, Graham filed a second motion for summary disposition, asking the TCDC

to vacate her convictions and dismiss her criminal case.  Dkt. # 1-2, at 111.  The TCDC held a

hearing on March 26, 2021, before the OCCA issued the mandate in <u>Bosse I</u>, and announced at

that hearing that it would grant Graham's request for postconviction relief, over the state's

objection.  <u>Id.</u> at 112.  Then, on April 8, 2021, one day after the OCCA issued the mandate in

<u>Bosse I</u> and one day before the OCCA recalled that mandate, the TCDC signed and filed a written

order granting Graham's application for postconviction relief.  <u>Id.</u> at 5-6.  In the written order, the

TCDC stated,

> [U]pon review of the file and being fully advised of the premises, [the court] hereby
> FINDS that the Petitioner is Indian as defined by law and that allegations against
> her occurred on Indian Land.  The State stipulated in its October 2, 2020, Response,
> pg. 3, that "1) Petitioner is a citizen of the Cherokee Nation with a citizenship date
> of September 12, 1996, and 2) the offenses for which Petitioner was convicted were
> committed within the boundaries of the Muscogee (Creek) Nation."  Proof of same
> has also been provided in Ex's. A and B of Petitioner's Supplement filed 8/30/17.
>
> Accordingly, pursuant to <u>McGirt v. Oklahoma</u>, 140 S. Ct. 2452 (2020) and
> <u>Bosse v. State</u>, 20[21] OK CR 3, ___ P.3d ___, slip *18, the Court vacates the
> convictions and dismisses the charges in the above styled and numbered cause
> because the State does not and did not have subject matter jurisdiction.

<u>Id.</u> at 5; <u>see</u> Okla. Stat. tit. 22, § 1085 (2022) ("If the court finds in favor of the applicant, it shall

vacate and set aside the judgment and sentence and discharge or resentence him, or grant a new

trial, or correct or modify the judgment and sentence as may appear appropriate.  The court shall

enter any supplementary orders as to rearraignment, retrial, custody, bail, discharge, or other

matters that may be necessary or proper."). The ODOC released Graham from state custody on April 8, 2021. Dkt. # 1, at 9; Dkt. # 8-10, at 6-7 n.3; Dkt. # 8-14, at 2.

Under Oklahoma law, the state had ten days from April 8, 2021, to seek a stay of the TCDC's order granting postconviction relief, twenty days to file a notice of appeal in the TCDC, and thirty days to perfect a postconviction appeal in the OCCA challenging the TCDC's final judgment granting postconviction relief. See OKLA. STAT. tit. 22, § 1084 (2022) (providing that state district court's written order granting or denying postconviction relief "is a final judgment"); OKLA. STAT. tit. 22, § 1087 (providing that "[a] final judgment" in a postconviction proceeding "may be appealed to the Court of Criminal Appeals on petition in error filed either by the applicant or the state within thirty (30) days from the entry of the judgment" and further providing that, "[u]pon motion of either party on filing of notice of intent to appeal, within ten (10) days of entering the judgment, the district court may stay the execution of the judgment pending disposition on appeal."); Weatherford v. State, 13 P.3d 987, 987-89 (Okla. Crim. App. 2000) (discussing § 1087 and explaining that "[t]his statute granting the right of post-conviction appeal conditions the right upon the appeal being commenced within thirty days. Thus if a party desires to invoke the appellate jurisdiction of this Court over post-conviction proceedings, he must do so within the time mandated by the Legislature"); Rule 5.2(C)(1), Rules of the Oklahoma Court of Criminal Appeals, Title 22, Ch. 18, App. (2022) (requiring party to file notice of appeal within twenty days from the date the order granting or denying postconviction relief is filed and providing that "[t]he filing of the Notice of Post-Conviction Appeal in the District Court is jurisdictional and failure to timely file constitutes waiver of the right to appeal"). The state did not seek a stay of the TCDC's April 8, 2021, order granting postconviction relief and did not perfect a postconviction appeal. Dkt. # 1-2, at 112, 117; Dkt. # 8-9, at 2; Dkt. # 8-10, at 14-16.

On August 12, 2021, over four months after the TCDC granted postconviction relief, vacated Graham's judgment and sentence, and dismissed the underlying criminal charges, the OCCA issued a published decision reaffirming its recognition, in several post-McGirt cases, that the Cherokee, Choctaw, and Chickasaw Reservations have not been disestablished.  State ex rel. Matloff v. Wallace, 497 P.3d 686, 689 (Okla. Crim. App. 2021), cert. denied sub nom Parish v. Oklahoma, 142 S. Ct. 757 (2022) ("Wallace").[8]  But the OCCA held in that same case "that McGirt v. Oklahoma announced a new rule of criminal procedure which we decline to apply retroactively in a state post-conviction proceeding to void a final conviction."  Id. at 688.  The OCCA stated,

> [E]xercising our independent state law authority to interpret the remedial scope of the state post-conviction statutes, we now hold that McGirt and our post-McGirt decisions recognizing these reservations shall not apply retroactively to void a conviction that was final when McGirt was decided.  Any statements, holdings, or suggestions to the contrary in our previous cases are hereby overruled.

Id. at 689.  The OCCA reasoned that "[n]on-retroactivity of McGirt in state post-conviction proceedings can mitigate some of the negative consequences so aptly described in [United States v. Cuch, 79 F.3d 987 (10th Cir. 1996)], striking a proper balance between the public safety, finality, and reliance interests in settled convictions against the competing interests of those tried and

---

[8] The Wallace case reached the OCCA via a petition for writ of prohibition filed by Mark Matloff, the District Attorney of Pushmataha County, asking the OCCA to vacate Judge Jana Wallace's order granting an application for postconviction relief filed by Clifton Merrill Parish, an Oklahoma prisoner who, like Graham, sought postconviction relief from a judgment and sentence that was final before McGirt was decided.  Wallace, 497 P.3d at 687.  After granting Parish's application for postconviction relief, Judge Wallace stayed enforcement of the order granting relief, the state filed a verified request for a stay and a petition for writ of prohibition in the OCCA, and the OCCA "stayed all proceedings and directed counsel to submit briefs" on the question of whether McGirt should be applied retroactively.  Id. at 687-88.  The records in this case, and the parties' briefs, sometimes refer to this case as Wallace and sometimes refer to this case as Matloff.  The Court refers to this case as Wallace but has not altered quoted material that refers to the case as Matloff.

10

sentenced under the prior jurisdictional rule." Wallace, 497 P.3d at 693. Balancing those

competing interests in the case before it, the OCCA concluded that the state's "reliance and public

safety interests . . . are always substantial" and that "Mr. Parish's legitimate interests in

postconviction relief for this jurisdictional error are minimal or non-existent." Id. at 693-94. As

to the latter point, the OCCA reasoned:

> McGirt raises no serious questions about the truth-finding function of the state
> courts that tried Mr. Parish and so many others in latent contravention of the Major
> Crimes Act. The state court's faulty jurisdiction (unnoticed until many years later)
> did not affect the procedural protections Mr. Parish was afforded at trial. The trial
> produced an accurate picture of his criminal conduct; the conviction was affirmed
> on direct review; and the proceedings did not result in the wrongful conviction or
> punishment of an innocent person. A reversal of Mr. Parish's final conviction now
> undoubtedly would be a monumental victory for him, but it would not be justice.

Id. at 694. Ultimately, the OCCA stated,

> Because we hold that McGirt and our post-McGirt reservation rulings shall
> not apply retroactively to void a final state conviction, the order vacating Mr.
> Parish's murder conviction was unauthorized by state law. The State ordinarily may
> file a regular appeal from an adverse post-conviction order, but here, it promptly
> petitioned this Court for extraordinary relief and obtained a stay of proceedings.
> The time for filing a regular post-conviction appeal (twenty days from the
> challenged order) has since expired. Rule 5.2(C), Rules of the Oklahoma Court of
> Criminal Appeals, Title 22, Ch. 18, App. (2021).

> The petitioner for a writ of prohibition must establish that a judicial officer
> has, or is about to, exercise unauthorized judicial power, causing injury for which
> there is no adequate remedy. Rule 10.6(A), Rules of the Oklahoma Court of
> Criminal Appeals, Title 22, Ch.18, App. (2021). There being no adequate remedy
> by appeal, the injury caused by the unauthorized dismissal of this final conviction
> justifies the exercise of extraordinary jurisdiction.

Id. The OCCA therefore granted the writ of prohibition and reversed the state district court's order

granting postconviction relief. Id.

On August 31, 2021, relying on Wallace, the OCCA vacated its decision in Bosse I and

withdrew its published opinion in Bosse I. Bosse II, 499 P.3d at 775. Thereafter, the state

11

dismissed as moot the petition for writ of certiorari it filed in the Supreme Court to seek review of the OCCA's decision in Bosse I. Id. at 774 n.2.

Meanwhile, in Graham's case, the state filed a notice of intent to seek extraordinary relief in the TCDC on August 19, 2021, and, the next day, filed a petition for writ of prohibition in the OCCA. Dkt. # 1-2, at 112; Dkt. # 8-10, at 3; see Wallace, 497 P.3d at 694 ("The petitioner for a writ of prohibition must establish that a judicial officer has, or is about to, exercise unauthorized judicial power, causing injury for which there is no adequate remedy.").[9] On August 25, 2021, while the petition for writ of prohibition was pending in the OCCA, the state filed a "Motion to Vacate Order Granting Post Conviction Relief, Reinstate Conviction and Sentences, and Remand to Custody" (hereafter, "motion to vacate"), asking the TCDC to (1) vacate its April 8, 2021, order granting Graham's application for postconviction relief, (2) reinstate Graham's convictions and sentences, and (3) remand Graham to state custody "pursuant to her original convictions." Dkt. # 8-8. Relying on Wallace, the state argued that the TCDC,

> is now vested with the knowledge that what took place on March 26, 2021 (and finalized by written order on April 8, 2021) was in error. The Defendant was never entitled to the retroactive relief she received because her convictions were final. Although this Court's order specifically determined – based upon [McGirt and Bosse I] – that the [state] "does not and did not have subject matter jurisdiction," this Court's retroactive application of McGirt and Bosse decisions to the Defendant's case contravened the collateral review limitation now set forth and more fully articulated in the Wallace decision.

---

[9] It is not clear whether the state could have requested a postconviction appeal out of time. See Rule 2.1(E), Rules of the Oklahoma Court of Criminal Appeals (2022) (providing procedures for requesting an out of time postconviction appeal). But even assuming this option was available to the state, there is no indication in the record that the state exercised it.

Id. at 3.  The state further argued that the TCDC had "inherent power" to vacate its April 8, 2021,

order.  Id. at 5.  On this point, the state asserted:

> [I]t is clear that this Court has the power and authority to reconsider and vacate its
> grant of post-conviction relief to the defendant, reinstate her conviction(s) and
> sentence(s), and order her recommitted on those sentences.  While this Court's
> order granting post-conviction relief may have conformed with Bosse, Wallace
> makes clear that post-conviction relief is not available based on McGirt.  Wallace,
> 2021 OK CR 21, ¶ 41.  Where a prior order is "clearly erroneous" under "current"
> law, this Court has the power to "modify or vacate its judgment."

Dkt. # 8-8, at 7-8.  Graham's former counsel specially appeared on her behalf[10] and moved to

strike the state's motion to vacate as a "nullity," arguing that the TCDC lawfully granted

postconviction relief through the order filed April 8, 2021, and that that order became final when

the state did not perfect a timely postconviction appeal.  Dkt. # 1-2, at 5, 21-24, 37-34.

On September 3, 2021, the OCCA declined to exercise jurisdiction over the state's petition

for writ of prohibition and dismissed the petition, noting that the state did not timely appeal the

April 8, 2021, order granting postconviction relief, stating that, "[u]nlike in Matloff, the State here

has not timely filed its petition for extraordinary relief," and further stating that it would not review

the petition because the state had not been denied extraordinary relief in state district court.  Dkt.

# 1-2, at 73-75; see Rule 10.1(A), Rules of the Oklahoma Court of Criminal Appeals, Title 22, Ch.

18, App. (2022) (providing that the OCCA "may entertain certain extraordinary writs which arise

out of criminal matters" but that the OCCA "will only entertain such writs if petitioner has been

denied relief in the District Court").

---

[10] The state certified that it mailed and emailed a copy of the motion to vacate to Graham's
attorney.  Dkt. # 8-8, at 11.

On November 5, 2021, the TCDC held a hearing on the state's motion to vacate.  Dkt. # 1-2, at 114, 117-18.  Graham did not appear at the hearing, but counsel specially appeared on her behalf "on all issues of service and jurisdiction."[11]  Id. at 118, 129, 150-52.  The state conceded that, based on "agreed upon facts" and the law that applied when the TCDC granted postconviction relief, "it appeared" that the TCDC "entered a proper ruling" on April 8, 2021.  Id. at 119-20.  But the state argued that "everything changed" when the OCCA decided Wallace.  Id. at 120-21.  The state also conceded that although it objected to the TCDC's decision to grant postconviction relief, it "did not appeal that ruling."  Id. at 124.  The state nonetheless argued that the TCDC could, and should, conclude, based on Wallace and the OCCA's "fairly significant" decision to withdraw its published opinion in Bosse I, that the TCDC erroneously relied on Bosse I to grant Graham's request for postconviction relief.  Id. at 125-29.  Graham's counsel argued that the motion to vacate should be stricken or summarily denied because the TCDC's ruling was correct when it was entered, state law permits the state to appeal from an order granting postconviction relief, and the TCDC's order became final when the state did not appeal.  Id. at 129-34, 136-37.  At the conclusion of the hearing, the TCDC orally announced that it would grant the state's motion to vacate.  Id. at 142.  The TCDC stated,

> When the [OCCA] came out with their decision in Bosse that seemed to provide the guidance that the lower courts had been waiting for, that the procedural

---

[11] Graham's counsel noted that the state did not provide Graham personal notice of the motion to vacate or that "her liberty was at risk."  Dkt. # 1-1, at 151.  Counsel argued that if the state had concerns about Graham remaining out of custody, pursuant to the order granting postconviction relief, the state could "have issued a summons" to Graham.  Id. at 150.  Counsel further argued, that "[a]ll [the state] did was serve an e-mail to her former lawyer, me," and that the state "do[es] not have jurisdiction for [Graham] to submit to anything because she personally has not been given any notice."  Id. at 151.

bars that were in place were not going to apply when there was claim for subject – lack of subject matter jurisdiction.

. . .

I entered the order in Ms. Graham's case because the <u>Bosse</u> decision was made.  The stay had been lifted and these cases had been pending for a very long time.  And I entered several orders, as I believed the law dictated that I do.

Now with the <u>Wallace</u> case, the Court of Criminal Appeals has determined that subject matter jurisdiction is a procedural rule and that their <u>Bosse</u> decision was in error, so much so that not only did they just reverse it, but as the State has pointed out, they basically eliminated that entire opinion.  I have a copy of it, but only if you had a paper copy do you now have that <u>Bosse</u> decision that is no longer law.

So now the Court is faced with, even in spite of the State not taking advantage of the appellate avenue, the State is coming in and asking the District Court to correct or fix or reverse its ruling that is now considered to be in error by our appellate court, which in our state is our final, deciding court.

Again, we're presented with a totally unique situation.  Does the District Court take action on a motion for which there is a final order that was not appealed?  I don't know.  I am left wondering with all of this, after this long year and some months, what a procedural bar really means for anyone.

I am, however, in taking into consideration fairness and equity I am going to grant the State's motion.

Dkt. # 1-2, at 140-42.  Over the state's objection, the TCDC nevertheless (1) stayed enforcement of its decision to grant the motion to vacate; (2) denied the state's request to either impose a bond or immediately remand Graham to state custody; and (3) denied the state's request to issue a warrant for Graham's arrest.  <u>Id.</u> at 142-57.  As to these points, the TCDC reasoned:

I am going to stay this decision because, taking into consideration equity and fairness, I am not going to have Ms. Graham remanded back into custody until our Oklahoma Court of Criminal Appeals has made its final ruling on this and told the lower court, me, whether or not this is correct, whether we are going to uphold procedural bars to the State when they don't get their stuff filed on time or at all, just like we waited when many defendants and petitioners did not do their applications timely or properly and fell under procedural bar or waiver.

. . .

I am mindful and note Defendant's point about bond and that is why this will be stayed, and then we can get guidance from the Court of Criminal Appeals as to how or if there will be any authority at all to remand somebody back about into custody under these circumstances. I don't know. But we will let them sort it out and tell us.

. . .

By the granting of the stay or the imposing of the stay, on my own, the order [granting the state's motion to vacate] has not taken effect yet. If the State wishes to be heard on that separate issue of bond or monitoring or custody or anything like that, then I'll let the State put us on notice, and if you want to supplement that in any way, give Mr. O'Carroll a chance to respond, I will allow that to happen and I'll set it for a hearing. Because this is -- again, I understand your issue, but I have stated that that order is stayed and so I am not sure that [Graham's] legal posture at this point with this, where we are, is that she is a ward of the State or in the custody of the Department of Corrections.

Just like, on the reverse side, when we had several of post-conviction reliefs -- relief applications granted with many people who were sitting in DOC, those orders being stayed prevented them from being released from the Department of Corrections. So I don't -- if it works one way I don't know why it doesn't work for the other way.

. . .

[The proposed written order offered by the state] does not mention anything about the stay, as we know, and, furthermore, without a journal entry of judgment that is not stayed I don't believe the Court has any authority to issue a warrant to compel someone's appearance here. I do not have jurisdiction over [Graham's] person under these circumstances. So I have no authority to issue a warrant of arrest.

. . .

As I had stated in chambers that, because I don't know exactly what this proceeding is, I am going to be candid, based on our procedural rules, it doesn't really fit anywhere and, for that reason, I do not have any ability or authority under any statutory or constitutional provision that would allow me to require Ms. Graham be here at this place or issue any kind of a warrant for her arrest or set a bond.

She is entitled to notice and due process on those things and until she can be here and be present for any of those things, questionably, I don't know how that happens either. The Court cannot take that action.

16

Dkt. # 1-2, at 142-43, 149-50, 154, 157.  In its written order, filed November 18, 2021, the TCDC

concluded, "in accordance with <u>Wallace</u>," that its reliance on <u>Bosse I</u> "was in error as [Graham's]

conviction was final on or about November 30, 2011, prior to the initiation of her post-conviction

relief application and well before the Supreme Court's decision in <u>McGirt</u>."  Dkt. # 8-9, at 1, 4.

The TCDC therefore granted the state's motion to vacate and ordered Graham "to be remanded

immediately to the custody of the Oklahoma Department of Corrections to serve out the remainder

of her terms of confinement." <u>Id.</u> at 4.  But, as previously discussed, the TCDC immediately stayed

enforcement of its order so that Graham could seek further review in the OCCA.  <u>Id.</u>

Because Oklahoma's Post-Conviction Procedure Act does not contemplate an appeal from

a state district court order granting the state's motion to vacate a final judgment granting

postconviction relief, Graham filed a petition for writ of prohibition in the OCCA on November

19, 2021.  Dkt. # 1-1, at 43-46.  In that petition, Graham argued:  (1) that the TCDC lacked

authority to vacate the April 8, 2021, order granting postconviction relief because that order

became final when the state did not perfect a postconviction appeal in accordance with state law;

(2) that the state did not provide Graham adequate notice "of a potential reversal of the trial court's

order" granting postconviction relief; (3) that the TCDC erred when it retroactively applied

<u>Wallace</u> to grant the state's motion to vacate given that <u>Wallace</u> was decided after the TCDC's

order became final and <u>Wallace</u> announced a new rule of criminal procedure; (4) that the state

"having relinquished custody of [Graham] by vacating her conviction, no longer has jurisdiction

of her because she is Native"; (5) that applying <u>Wallace</u> to undo the TCDC's final order granting

postconviction relief violated the state and federal constitutional prohibitions against <u>ex post facto</u>

laws by depriving Graham of "fair warning"; and (6) that the TCDC's order granting the motion

to vacate violated Graham's right to due process and equal protection because she "has a liberty

17

interest protected by a clear, specific and exclusive method under Oklahoma law for the [s]tate to seek relief from the district court's order freeing her" and has "a substantial and legitimate expectation [that the OCCA] will follow its own rules and law," and that "allow[ing] the [s]tate an unlawful remedy now," when the state chose not to appeal, constitutes "a substantive due process violation." Dkt. # 1-2, at 48-53.

In April 2022, the OCCA issued an order seeking a response from the Oklahoma Attorney General in eleven pending matters, including Graham's pending petition for writ of prohibition, wherein state district courts originally granted postconviction relief, the state did not appeal, and the state district courts subsequently vacated orders granting postconviction relief after the OCCA issued its decision in Wallace. Dkt. # 1-1, at 66-71. The OCCA directed the Attorney General to address two questions:

> 1.      whether any legal theory or basis gives the district courts power to reacquire jurisdiction in these post-conviction cases after their original orders granting postconviction relief were not appealed by the State within the statutory time period for appealing such orders; and

> 2.      are the district court's orders granting post-conviction relief void or voidable by the district court because they were based upon our decision in [Bosse I], which has been withdrawn and is no longer the applicable law.

Id. at 70.

In a 3-2 split decision filed April 18, 2023, the OCCA denied Graham's petition for a writ of prohibition. Dkt. # 1-1, at 4-41. The majority opinion construed Graham's petition as "arguing [that] the District Court acted without jurisdiction when it vacated the order granting post-conviction relief." Id. at 5. The majority rejected that argument, reasoning:

> Because the convictions in this matter were final before the July 9, 2020, decision in McGirt, the holding in McGirt does not apply and the District Court's order vacating those convictions was unauthorized by law. See Matloff, 2021 OK CR 21, ¶ 40, 497 P.3d at 694. "The effect of the District Court's order was to

18

discharge an offender who was under lawful [judgment and] sentence." Application of Anderson, 1990 OK CR 82, ¶ 5, 803 P.2d 1160, 1163. The erroneous judicial release by the District Court of a prisoner is subject to prompt correction by the court. See Harris v. District Court of Oklahoma County, 1988 OK CR 26, ¶ 4, 750 P.2d 1129, 1130-31. This is so even when the unauthorized dismissal occurs in the context of an order granting post-conviction relief which is not timely appealed by the State. See Anderson, 1990 OK CR 82, ¶¶ 3, 5, 803 P.2d at 1162, 1163. That is particularly so here given the misdirection our original decision in Bosse gave to both the District Court and the parties."

Because dismissal of Petitioner's judgment and sentence was unauthorized under Oklahoma law, the District Court retained jurisdiction to vacate or modify its previous order granting post-conviction relief. See Ex parte Eley, 1913 OK CR 77, 130 P. 821, 823. Petitioner fails to show the District Court's reinstatement of her convictions constituted an exercise of judicial power that is unauthorized by law and that the exercise of said power will result in injury for which there is no other adequate remedy. Accordingly, Petitioner's petition for writ of prohibition is DENIED.

Dkt. # 1-1, at 6-7.

Two judges dissented; both agreed with Graham that the TCDC had no authority under state law to vacate its final order granting postconviction relief when the state did not perfect a postconviction appeal. One dissenting judge explained:

Post-conviction relief in Oklahoma is governed entirely by statute, and where the Post-Conviction Procedure Act does not grant a court jurisdiction, no jurisdiction exists. See Weatherford v. State, 2000 OK CR 22, ¶ 4, 13 P.3d 987, 988 (holding court is without jurisdiction to entertain an attempted appeal not in compliance with post-conviction statute). In this case, [the TCDC] granted post-conviction relief on April 8, 2021, vacating [Graham's] convictions, and pursuant to statute, the State had thirty days in which to appeal. 22 O.S. 2011, § 1087. The State did not do so and [the TCDC's] order became final.

. . .

Had the State properly appealed [the] April 8th order, Matloff would likely have decided that appeal in the State's favor, but once that statutory appeal time expired, there was no longer any case or controversy giving the court jurisdiction. The State's motion to vacate the grant of post-conviction relief, filed August 25, 2021 and granted by [the TCDC] on November 18th, simply does not exist under Oklahoma law.

19

Dkt. # 1-1, at 10-11 (Rowland, P.J, dissenting).  In a separate opinion, one dissenting judge agreed

with Graham's view that the TCDC's April 8, 2021, order granting postconviction relief was "a

valid order . . . based upon the extant law at that time," namely, <u>McGirt</u> and <u>Bosse I</u>.  <u>Id.</u> at 28

(Lumpkin, J., dissenting).  This dissenting judge opined that "[t]he District Court acted as it was

legally required to do when it granted the post-conviction judgment which became final" and that

the majority was "disregarding basic principles of law to reach a desired result."  <u>Id.</u> at 29.  The

dissenting judge reasoned,

> At the time of [Graham's] post-conviction proceeding, this Court held in
> <u>Bosse</u> that <u>McGirt</u> was applicable to cases on collateral review.  The <u>Bosse</u> and
> <u>McGirt</u> holdings were changes in the law from the time of [Graham's] conviction.
> However, the law changes and courts must apply the law in existence at the time of
> making their decisions.  Thus, pursuant to <u>McGirt</u> and <u>Bosse</u>, [Graham's] judgment
> and sentence was unlawful at the time it was entered as the District Court of Tulsa
> County lacked jurisdiction to try her for her crime.  [The TCDC's] post-conviction
> order dismissing [Graham's] conviction was a final judgment (since the State did
> not appeal); thus, [the TCDC] lacked authority to grant the State's motion to vacate
> when no case was pending before [it] in the District Court.  By finding the District
> Court's reliance on <u>Bosse</u> unwarranted, the Court uses <u>Bosse</u> as a strawman to
> achieve its desired result.
>
> . . .
>
> As for the majority's reliance upon <u>Matloff</u> to affirm the District Court's
> vacation of the order granting post-conviction relief, that reliance is misplaced.
> <u>Matloff</u> announced a new rule of criminal procedure; therefore, its holding should
> not be applied retroactively, just as it held the <u>McGirt</u> decision would not be applied
> retroactively.  Yet retroactive application of <u>Matloff</u> is exactly what the majority
> does in this order in its quest to preserve the conviction.

<u>Id.</u> at 34-35.

Following a hearing on April 19, 2023, the TCDC ordered Graham to "surrender to the

court" the next day.  Docket Sheet,  <u>State v. Graham</u>, https://www.oscn.net/dockets/GetCase

Information.aspx?db=tulsa&number=CF-2007-5987&cmid=2046549, last visited June 12, 2023.

On April 20, 2023, Graham "surrendered to the custody of the [ODOC] in the front lobby of the

David L. Moss Criminal Justice Center" ("the Tulsa County Jail").  Dkt. # 4, at 2.  At that time,

"[t]here was no active warrant for her arrest, nor any new charges for Graham to be detained,

arrested or held in Tulsa County."  Id. at 3.  Rather, Graham was detained pursuant to an Order of

Commitment for punishment issued by the TCDC, directing that she be transported to state prison

to continue serving her original sentences.  Id.

Graham filed the instant federal habeas petition on April 25, 2023.[12]  The next day, the

TCDC filed a "re-instated judgment and sentence," dated April 20, 2023, reinstating Graham's

previously vacated convictions and sentences.  Dkt. # 8-14.  Graham is incarcerated at the Mabel

Bassett Correctional Center, in McLoud, Oklahoma.  Dkt. # 4, at 57.

## II.

A federal court has equitable discretion to grant a petition for writ of habeas corpus to "a

person in custody pursuant the judgment of a State court only on the ground that [s]he is in custody

in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a);

Brown v. Davenport, 142 S. Ct. 1510, 1523 (2022) ("Congress invested federal courts with

discretion when it comes to supplying habeas relief—providing that they 'may' (not must) grant

writs of habeas corpus, and that they should do so only as 'law and justice require.'" (quoting 28

U.S.C. §§ 2241, 2243).  It may seem odd that "a single [federal] judge on habeas corpus" could

free "a prisoner, after conviction in a State court," upon finding him unconstitutionally restrained."

Davenport, 142 S. Ct. at 1532 (Kagan, J., dissenting) (quoting Ex parte Royall, 117 U.S. 241, 253

_____

[12] Ordinarily, a state prisoner has one year from the date her judgment becomes final on direct review to file a timely federal habeas petition.  28 U.S.C. § 2244(d)(1)(A); Gonzalez v. Thaler, 565 U.S. 134, 150 (2012).  White does not contest the timeliness of the petition.  Dkt. # 8, at 2 & n.4.

(1886)).  But, historically speaking, a habeas petitioner was "'entitled to a [writ of] habeas corpus,' even after his case "had gone to conviction and sentence," when the state court 'ha[d] no constitutional authority or power to condemn' him."  Id. (quoting In re Nielsen, 131 U.S. 176, 184 (1889)).

Today, however, Congress and the Supreme Court have significantly restricted a federal court's discretion to grant habeas relief to a state prisoner.  As relevant in this case, "a federal court '*shall not . . . gran*[*t*]' relief with respect to a claim that has been adjudicated on the merits in state court '*unless*' the state court's decision was (1) 'contrary to' or an 'unreasonable application of' clearly established federal law, as determined by the decisions of [the Supreme Court], or (2) based on an 'unreasonable determination of the facts' presented in the state-court proceeding." Davenport, 142 S. Ct. at 1520 (emphases in original) (quoting 28 U.S.C. § 2254(d)).  As used in § 2254(d),

> [t]he term "unreasonable" refers not to "ordinary error" or even to circumstances where the petitioner offers "a strong case for relief," but rather to "'extreme malfunctions in the state criminal justice syste[m].'"  In other words, a federal court may intrude on a State's "'sovereign power to punish offenders'" only when a decision "was so lacking in justification . . . beyond any possibility for fairminded disagreement."

Mays v. Hines, 141 S. Ct. 1145, 1149, reh'g denied, 141 S. Ct. 2693 (2021) (per curiam) (internal citation omitted) (quoting Harrington v. Richter, 562 U.S. 86, 102-03 (2011)).  In addition, "[w]hen a state court rejects a federal claim without expressly addressing that claim, a federal habeas court must presume that the federal claim was adjudicated on the merits—but that presumption can in some limited circumstances be rebutted."  Johnson v. Williams, 568 U.S. 289, 301 (2013).  For example, "[w]hen the evidence leads very clearly to the conclusion that a federal claim was inadvertently overlooked in state court, § 2254(d) entitles the prisoner to an unencumbered

opportunity to make [her] case before a federal judge." Id. at 303; see also Bland v. Sirmons, 459

F.3d 999, 1010 (10th Cir. 2006) ("The § 2254(d) standard does not apply to issues not decided on

the merits by the state court.").   And, despite the admittedly narrow path that exists for state

prisoners to obtain federal habeas relief, some cases present "exceptional circumstances where the

need for the remedy afforded by the writ of habeas corpus is apparent." Bowen v. Johnston, 306

U.S. 19, 27 (1939).  This is one of those cases.

## III.

Graham claims that the state courts deprived her of a liberty interest without due process,

in violation of the Fourteenth Amendment, by reinstating her original judgment and sentence and

reimprisoning her after the TCDC lawfully granted her application for postconviction relief,

vacated her original judgment and sentence on the ground that the state did not have authority to

prosecute her for crimes she committed in Indian country, and dismissed the underlying criminal

charges, and the state waived its statutory right to appeal the grant of postconviction relief.  Dkt.

# 1, at 7, 15-23; Dkt. # 9, at 1-4.[13]  Relying primarily on Hicks v. Oklahoma, 447 U.S. 343 (1980),

Graham contends that the OCCA's decision denying her petition for writ of prohibition—and

---

[13] In the petition, Graham does not reassert the ex post facto claim she made to the OCCA, and she makes only passing references to a violation of her right to equal protection without developing facts or arguments that might support a colorable equal protection claim.  Dkt. # 1, at 7, 22-23.  In her reply brief, Graham asserts that reinstating her conviction "violated [her] constitutional right against twice being placed in double jeopardy for the same offense." Dkt. # 9, at 3-4.  But Graham did not raise a double jeopardy argument in her petition, and she did not fairly present a double jeopardy argument to the OCCA.  Dkt. # 1, generally; Dkt. # 1-1, at 43-53.  Graham also makes several other arguments in the reply brief, none of which was raised in the petition or presented to the OCCA.  Dkt. # 9, at 5-18; see Dkt. # 1, generally; Dkt # 1-1, at 43-53.  The Court thus confines its analysis to the Fourteenth Amendment due process claim that Graham fairly presented to the OCCA.

effectively reversing the TCDC's April 8, 2021, order—resulted from the OCCA's failure to follow state law and the OCCA's "own rules" regarding postconviction review and that the OCCA's "manipulation of state law statutes and rules deprived [her] of her liberty interest as provided by the Fourteenth Amendment." Dkt. # 1, at 15-17, 21-23.  More specifically, Graham argues that the majority disregarded that its decision in <u>Bosse I</u> was valid state law on April 8, 2021, when the majority "falsely characterized" the TCDC's April 8, 2021, order granting postconviction relief as "unauthorized by law." <u>Id.</u> at 7, 19-20; Dkt. # 1-1, at 6.  Finally, Graham contends that by releasing her from custody after it vacated her convictions and dismissed the underlying charges, the state could not "re-convict[]" her as the state "no longer has jurisdiction of her because she is Native." Dkt. # 1, at 6, 17, 22.

White urges this Court to deny the petition for writ of habeas corpus for two reasons.  First, White contends that Graham's "complaints regarding the reinstatement of her convictions on post-conviction review" are not cognizable on federal habeas review because they allege errors of state law and "attack[] state post-conviction proceedings and not the constitutionality of her original judgment and sentence." Dkt. # 8, at 7-9.  Second, White contends that even if Graham asserts a cognizable federal due process claim, 28 U.S.C. § 2254(d) bars relief because the OCCA's decision is neither contrary to nor based on an unreasonable application of clearly established

federal law and is not based on an unreasonable determination of the facts presented in state court. Id. at 2 n.3, 9-15.[14]

## IV.

Preliminarily, the Court rejects White's position that Graham does not state a cognizable federal habeas claim.  The Court agrees with White that some of Graham's arguments appear to ask this Court to reexamine the OCCA's determination that, under Oklahoma law, a state district court "retain[s] jurisdiction to vacate or modify its previous order granting post-conviction relief" if the order granting relief "was unauthorized under Oklahoma law," even when the state has waived its statutory right to appeal.  Dkt. # 1-1, at 6-7; see, e.g., Dkt. # 1, at 12-23; Dkt. # 9, at 5-7; Dkt. # 8, at 7-9 & n.6.  And some of Graham's arguments appear to ask this Court to reconsider the soundness of the OCCA's decision in Wallace interpreting the remedial scope of Oklahoma's postconviction procedures.  Dkt. # 1, at 21-22; Dkt. # 9, at 5-7; Dkt. # 8, at 7-9 & n.6.  As White argues, these are matters of state law that this Court cannot reexamine on federal habeas review. See Estelle v. McGuire, 502 U.S. 62, 67-68 (1991) (reiterating that "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions"); Eizember v. Trammell, 803 F.3d 1129, 1145 (10th Cir. 2015) ("[T]his court's role on collateral review isn't

---

[14] White concedes that Graham exhausted available state remedies as to her "claim," and considering this concession in the context of White's arguments, the Court understands this concession as referring to Graham's Fourteenth Amendment due process claim.  See Dkt. # 8, at 2-3 & n.3 (recognizing that Graham "is alleging that the state courts violated her due process rights in reinstating her convictions" and stating "Petitioner's claim is exhausted"); id. at 8-9 ("Petitioner's claim is that the state court violated her due process rights on post-conviction in reinstating her convictions"); 28 U.S.C. § 2254(b)(1)(A) (barring grant of federal habeas relief "unless it appears that—the applicant has exhausted the remedies available in the courts of the State").

to second-guess state courts about the application of their own laws but to vindicate federal rights."); <u>Lambert v. Workman</u>, 594 F.3d 1260, 1264 (10th Cir. 2010) ("The OCCA's understanding of its own authority in the state appellate process is a matter of state law and, as such, generally beyond the purview of federal habeas review."); <u>Goetz v. Hand</u>, 195 F. Supp. 194, 196 (D. Kan. 1960) ("It is not a function of this court when presented with petitions for the writ of habeas corpus to act as a super-appellate reviewer of the decisions of the state").  But Graham primarily argues that the state courts' failure to follow state law and state procedural rules, under the unique facts of her case, deprived her of a liberty interest protected by the Fourteenth Amendment.  And whether a state's application of its own laws comport with the Fourteenth Amendment's Due Process Clause is a matter of federal law, not state law.  <u>See</u> <u>e.g.</u>, <u>Hicks</u>, 447 U.S. at 345-46 (granting certiorari "to consider the petitioner's contention that the State deprived him of due process of law guaranteed to him by the Fourteenth Amendment" and concluding the state deprived the petitioner of a protected liberty interest when it "denied the petitioner the jury sentence to which he was entitled under state law"); <u>Boddie v. Connecticut</u>, 401 U.S. 371, 379 (1971) (explaining that "a statute or a rule may be held constitutionally invalid as applied when it operates to deprive an individual of a protected right although its general validity as a measure enacted in the legitimate exercise of state power is beyond question"); <u>Lisenba v. California</u>, 314 U.S. 219, 236 (1941) ("The Fourteenth Amendment leaves California free to adopt, by statute or decision, and to enforce such rule as she elects, whether it conform to that applied in the federal or in other state courts. But the adoption of the rule of her choice cannot foreclose inquiry as to whether, in a given case, the application of that rule works a deprivation of the prisoner's life or liberty without due process of law."); <u>Leatherwood v. Allbaugh</u>, 861 F.3d 1034, 1043 (10th Cir. 2017) (citing the well-established rule that a federal habeas court may not provide relief for state-

law errors but explaining that a state prisoner may seek federal habeas relief "if a state law decision is so fundamentally unfair that it implicates federal due process."); Eizember, 803 F.3d at 1145 (describing Hicks as holding "that the federal due process guarantee sometimes requires states to abide their own procedural rules, at least when those rules create a 'substantial and legitimate' liberty interest"); Guttman v. Khalsa, 669 F.3d 1101, 1115 (10th Cir. 2012) (citing with approval district court's statement that "although the contours of a constitutional right can be defined by state law, the question of whether a state has afforded sufficient process to protect a constitutional right is not a question of state law"); Cummings v. Sirmons, 506 F.3d 1211, 1237 (10th Cir. 2007) (recognizing that "in rare circumstances, a determination of state law can be so arbitrary or capricious as to constitute an independent due process violation"); Benson v. Martin, 8 F. App'x 927, 930 (10th Cir. 2001) (citing Hicks for the proposition that "[i]f the state court did not follow its own rules, this error will not give rise to habeas relief unless failure to follow the rules also constituted a violation of due process guaranteed by the federal constitution"); Aycox v. Lytle, 196 F.3d 1174, 1179-80 (10th Cir. 1999) (citing Hicks for the proposition that "[i]f the state violated its own laws, [the petitioner] must show that the alleged violation of state law denied him due process under the Fifth and Fourteenth Amendments").

The Court also agrees with White that, in most circumstances, a federal habeas court will not consider alleged errors—even constitutional errors—arising from state postconviction proceedings.  Dkt. # 8, at 8-9; see, e.g., Word v. Lord, 648 F.3d 129, 131-32 (2d Cir. 2011) (gathering cases from several circuits and holding "that alleged errors in a postconviction proceeding are not grounds for § 2254 review because federal law does not require states to provide a post-conviction mechanism for seeking relief.  Word's claim of a procedural right to a state post-conviction proceeding does not implicate federal law."); Sellers v. Ward, 135 F.3d 1333, 1339

(10th Cir. 1998) (discussing petitioner's claim that the OCCA erroneously applied a state procedural rule barring successive postconviction claims to determine that he waived an actual-innocence claim based on newly discovered evidence and concluding, in part, that "because the constitutional error Sellers raises focuses only on the State's post-conviction remedy and not the judgment which provides the basis for his incarceration, it states no cognizable federal habeas claim."); Steele v. Young, 11 F.3d 1518, 1523-24 (10th Cir. 1993) (stating, arguably in dicta, that even if the state prisoner's claim that "the 'Oklahoma appellate court system as a whole" systematically denies state prisoners "due process" was not barred on exhaustion grounds, the prisoner's "claim challenging the Oklahoma post-conviction procedures on their face and as applied to him would fail to state a federal constitutional claim cognizable in a federal habeas proceeding"); Kirby v. Dutton, 794 F.2d 245, 246-47 (6th Cir. 1986) (describing state prisoner's claims as alleging "a denial of the sixth amendment right to effective assistance of counsel" in postconviction proceedings and a denial of due process and equal protection based on the state court's refusal to provide substitute postconviction counsel; describing these claims as "unrelated to his detention," concluding prisoner did not state cognizable habeas claims, and reasoning "that the writ is not the proper means by which prisoners should challenge errors or deficiencies in state post-conviction proceedings such as Kirby claims here because the claims address collateral matters and not the underlying state conviction giving rise to the prisoner's incarceration").  But none of these cases involves the unique facts presented in this case.  Graham does not allege that the OCCA misapplied a state procedural rule to conclude that she waived a specific postconviction claim (Sellers); that she was denied postconviction review based on the OCCA's application of a procedural rule (Word); that she was deprived of the effective assistance of postconviction counsel or was denied substitute postconviction counsel (Kirby); or that the OCCA systematically deprives

state prisoners of due process in postconviction proceedings (Steele).  Rather, Graham alleges that the state violated her right to due process by depriving her of a liberty interest—her freedom—without due process because the TCDC applied existing law to grant her application for postconviction relief and discharge her from state custody, as authorized by state law, and the state courts subsequently disregarded, or arbitrarily applied, state law by permitting the state to effectively obtain a reversal of the lawful and final grant of postconviction relief when the state did not perfect a postconviction appeal and when the state's request to "vacate" the lawful, final postconviction judgment, "re-convict[]" her, and recommit her to state prison four months after her release from state custody was based on the newly-announced Wallace rule.  Dkt. # 1, at 7, 11-19.  Even assuming the Fourteenth Amendment violation Graham alleges here could be construed as arising from a state postconviction proceeding,[15] Graham's present confinement under the reinstated judgment and sentence that was entered against her in April 2023 is the direct result of the alleged due process violation.  Because Graham's present detention in state custody resulted from the claimed violation of her Fourteenth Amendment right to due process, her claim "is just as close to the core of habeas corpus as an attack on [her] conviction[s], for it goes directly to the

---

[15] This is a generous assumption.  As previously discussed, the TCDC, Graham's counsel, and at least one OCCA judge agreed that the proceedings related to the state's motion to vacate the TCDC's final judgment could not be properly characterized as proceedings under the Oklahoma Post-Conviction Procedure Act.  Dkt. # 1-2, at 145, 157 (TCDC's statements made in context of hearing on state's motion to vacate: "I am not sure that we are proceeding under the Post-Conviction Procedure Act at this point. . . . I am not taking the motion to vacate as post-conviction procedure"; "I don't know exactly what this proceeding is . . . based on our procedural rules, it doesn't really fit anywhere"); id. at 147 (Graham's counsel's statement at same hearing, "Judge, I think you're correct in saying that this is not under the uniform post-conviction relief act"); Dkt. # 1-1, at 11 (noting in dissenting opinion that "[t]he [s]tate's motion to vacate the grant of post-conviction relief . . . simply does not exist under Oklahoma law").

constitutionality of [her] physical confinement itself and seeks . . . immediate release from that confinement." Preiser v. Rodriguez, 411 U.S. 475, 489 (1973); see also id. at 484 ("It is clear, not only from the language of ss 2241(c)(3) and 2254(a), but also from the common-law history of the writ, that the essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and that the traditional function of the writ is to secure release from illegal custody."); Davenport, 142 S. Ct. at 1520-21 (discussing history of "the Great Writ" and noting that "in both English and American law:  [a] habeas court could grant relief if the court of conviction lacked jurisdiction over the defendant or his offense"); Sellers, 135 F.3d at 1339 (distinguishing between constitutional errors that "focus[] only on the State's post-conviction remedy" and constitutional errors that focus on "the judgment which provides the basis for [the petitioner's] incarceration").

Based on the foregoing, the Court rejects White's arguments that Graham's Fourteenth Amendment due process claim, challenging her present confinement under the reinstated judgment and sentence entered against her in April 2023, does not present a cognizable federal habeas claim.

**V.**

Likewise, the Court rejects White's alternative argument that § 2254(d) bars relief.  As previously discussed, § 2254(d) establishes the framework for a federal habeas court's review of a state court's decision when the state court has adjudicated the merits of a federal claim.  That framework requires a petitioner to show, as a precondition to obtaining habeas relief, that the state court's "adjudication of the claim" either (1) "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," § 2254(d)(1); or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," § 2254(d)(2).  White contends that § 2254(d)(1) bars relief because Graham does not

30

"identify any Supreme Court case that clearly establishes that due process may be violated when a state court reinstates a conviction following an erroneous grant of post-conviction relief." Dkt. # 8, at 9.[16]   White further contends that § 2254(d)(2) bars relief because Graham has not shown that the OCCA's decision is based on an unreasonable factual determination. Id. at 13-15.   In response, Graham contends that Hicks clearly establishes that due process is violated "when the state law error results in a deprivation of a liberty interest," and the state's failure to apply state law was "arbitrary in the constitutional sense" or fundamentally unfair. Dkt. # 9, at 1-3, 6.  Graham

---

[16]  White's framing of the issue on which clearly established federal law is purportedly silent is flawed for two reasons.  First, by broadly framing the issue, White disregards the unique procedural facts of this case which do not merely involve a state court's reinstatement of a conviction "following an erroneous grant of post-conviction relief."  State district courts, like any other lower court that issues orders subject to appellate review, often may be called upon to reinstate convictions after erroneously granting postconviction relief.  But, even under Oklahoma's Post-Conviction Procedure Act, that call generally comes directly from the OCCA after it obtains appellate jurisdiction to review the grant of postconviction relief through a timely postconviction appeal.  See OKLA. STAT. tit. 22, § 1087 (providing that "[a] final judgment" in a postconviction proceeding "may be appealed to the Court of Criminal Appeals on petition in error filed either by the applicant or the state within thirty (30) days from the entry of the judgment" and further providing that, "[u]pon motion of either party on filing of notice of intent to appeal, within ten (10) days of entering the judgment, the district court may stay the execution of the judgment pending disposition on appeal."); Weatherford, 13 P.3d at 987-89 (discussing § 1087 and explaining that "[t]his statute granting the right of post-conviction appeal conditions the right upon the appeal being commenced within thirty days.  Thus if a party desires to invoke the appellate jurisdiction of this Court over post-conviction proceedings, he must do so within the time mandated by the Legislature"); Rule 5.2(C)(1), Rules of the Oklahoma Court of Criminal Appeals, Title 22, Ch. 18, App. (2022) (requiring party to file notice of appeal within twenty days from the date the order granting or denying postconviction relief is filed and providing that "[t]he filing of the Notice of Post-Conviction Appeal in the District Court is jurisdictional and failure to timely file constitutes waiver of the right to appeal").  Second, by framing the issue as one involving an "erroneous" grant of postconviction relief, White ignores Graham's valid argument, recognized by two dissenting members of the OCCA and further discussed below, see infra, section VI, that the TCDC's April 8, 2021, order granting postconviction relief was, in fact, authorized by the law as it existed on April 8, 2021.  In any event, for the reasons discussed next, § 2254(d)(1) does not bar relief because § 2254(d) does not apply.

further contends that the OCCA's decision is based on its erroneous factual determination that the TCDC's April 8, 2021, order was "unauthorized by law" or "erroneous." Dkt. # 1, at 14, 19-21.

Critically though, § 2254(d)'s framework "applies only when a federal claim was 'adjudicated *on the merits* in State court." Johnson, 568 U.S. at 302 (emphasis in original). And, while Johnson generally requires a federal habeas court to presume that a federal claim fairly presented in state court was adjudicated on the merits when there is no indication that the state court applied a procedural bar, Johnson created only a rebuttable presumption. Id. at 298-301. The Johnson Court explained that "[a] judgment is normally said to have been rendered 'on the merits' only if it was 'delivered after the court . . . heard and *evaluated* the evidence and the parties' substantive arguments.'" Id. at 302 (emphasis in original) (quoting Black's Law Dictionary 1199 (9th ed. 2009)). Thus, "[i]f a federal claim is rejected as a result of sheer inadvertence, it has not been evaluated based on the intrinsic right and wrong of the matter" and § 2254(d)'s framework does not apply. Id.

As previously noted, White concedes, and the record shows, that Graham fairly presented her Fourteenth Amendment due process claim to the OCCA. See supra, n.14; Dkt. # 1-1, at 53. In her petition for writ of prohibition, Graham discussed Hicks, asserted that she "has a liberty interest protected by a clear, specific and exclusive method under Oklahoma law for the State to seek relief from the district court's order" discharging her from state custody, argued that "it will be a substantive due process violation for [the OCCA] to allow the State an unlawful remedy now," and further argued that "[u]pending an un-appealed final order . . . months after [her] unfettered release" would contravene her "substantial and legitimate expectation" that the OCCA "will follow its own rules and laws." Dkt. # 1-1, at 53. White recognizes that the OCCA did not discuss Graham's Fourteenth Amendment due process claim but urges this Court to apply the Johnson

presumption and presume that the OCCA rejected the Fourteenth Amendment claim on the merits. Dkt. # 8, at 10 n.8.  The Court declines to do so because that presumption is rebutted under the circumstances of this case.  Nothing in the OCCA's five-page majority opinion even hints that the majority acknowledged, much less evaluated, the substance of Graham's Fourteenth Amendment claim.  Dkt. # 1-1, at 4-7, 48-53.  In briefly recounting the facts, the majority provides a truncated timeline that does not mention or allude to the fact that Graham was released from state custody on April 8, 2021, the same day the TCDC granted postconviction relief.  Id. at 4-5.  And the majority's legal conclusions focus on whether state law authorizes a state district court to vacate an "erroneous" order granting postconviction relief even when the state does not pursue a postconviction appeal.  Id. at 6-7; see also Dkt. # 1-1, at 69-70 (calling for response from Attorney General as to two specific questions, neither of which addressed potential due process implications of permitting state district courts to "reacquire jurisdiction" when the state does not appeal from a final order granting postconviction relief).[17]  Oddly, the majority's discussion of state law omits any references to the Post-Conviction Procedure Act under which Graham sought and obtained postconviction relief, and any references to the OCCA's own procedural rules governing postconviction review, and thus seems to entirely avoid consideration of whether the Act or the OCCA's rules might have created "a substantial and legitimate expectation" that a state district court order granting postconviction relief would be final absent a timely postconviction appeal.

---

[17] The state's response to Graham's petition for writ of prohibition similarly ignored the Fourteenth Amendment due process claim and primarily urged the OCCA to reject Graham's argument that the TCDC "acted beyond its authority" and to find instead that the TCDC had inherent authority to vacate the April 8, 2021, order because that order was "void and unauthorized by law" after Wallace.  Dkt. # 8-10.

Id.; but see id. at 10 (Rowland, P.J., dissenting) ("Post-conviction relief in Oklahoma is governed entirely by statute, and where the Post-Conviction Procedure Act does not grant a court jurisdiction, no jurisdiction exists.").  All told, no part of the majority opinion suggests that the majority considered whether permitting the TCDC to "reacquire jurisdiction" to reinstate Graham's original judgment and sentence absent a timely postconviction appeal by the state— when the TCDC concluded in ruling on the application for postconviction relief that it lacked criminal jurisdiction over Graham in the first instance and when the TCDC recognized in ruling on the motion to vacate that it lacked jurisdiction over Graham's person because she had been discharged from state custody—might deprive Graham of a liberty interest without due process.

Because the OCCA majority inadvertently overlooked (or intentionally ignored) Graham's Fourteenth Amendment due process claim, § 2254(d)'s framework does not apply.  As a result, this Court will review that claim de novo.  See Johnson, 568 U.S. at 303 ("When the evidence leads very clearly to the conclusion that a federal claim was inadvertently overlooked in state court, § 2254(d) entitles the prisoner to an unencumbered opportunity to make [her] case before a federal judge."); Bland, 459 F.3d at 1010 ("The § 2254(d) standard does not apply to issues not decided on the merits by the state court.").

**VI.**

The Fourteenth Amendment's Due Process Clause guarantees that states will not deprive any person "of life, liberty, or property, without due process of law."  U.S. Const. amend. XIV, § 1.  "The Supreme Court has interpreted this language as guaranteeing not only certain procedures when a deprivation of an enumerated right takes place (procedural due process), but also as guaranteeing certain deprivations won't take place without a sufficient justification (substantive due process)."  Browder v. City of Albuquerque, 787 F.3d 1076, 1078 (10th Cir. 2015); see also

34

Hicks, 447 U.S. at 346-47 (discussing due process violation arising from arbitrary application of state laws); Wolff v. McDonnell, 418 U.S. 539, 558 (1974) ("The touchstone of due process is protection of the individual against arbitrary action of government."); Morrissey v. Brewer, 408 U.S. 471, 481 (1972) ("[D]ue process is flexible and calls for such procedural protections as the particular situation demands."). The Court understands Graham's claim as asserting a substantive due process claim and concludes, for two reasons, that the state courts deprived Graham of an unconditional liberty interest—namely, her freedom from state custody—by applying state law in a way that was both fundamentally unfair and arbitrary in the constitutional sense. Dkt. # 1, at 22; see Aycox, 196 F.3d at 1179-80 (noting that a "deprivation occasioned by the state's failure to follow its own law must be arbitrary in the constitutional sense; that is, it must shock the judicial conscience"); cf. Bearden v. Georgia, 461 U.S. 660, 666 (1983) (suggesting that revoking probation may violate due process when it is "fundamentally unfair or arbitrary").

First, the state courts unquestionably deprived Graham of a liberty interest. "A liberty interest may arise from the Constitution itself, by reason of guarantees implicit in the word 'liberty,' or it may arise from an expectation or interest created by state laws or policies." Wilkinson, 545 U.S. at 221; see Kerry v. Din, 576 U.S. 86, 98 (2015) (plurality opinion) (explaining that "what Wilkinson meant by an 'expectation or interest' was . . . a present and legally recognized substantive entitlement"). Under the unique facts of this case, Graham had a liberty interest inherent in the Due Process Clause and a state-created liberty interest. Admittedly, "[t]here is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence." Greenholtz v. Inmates of Neb. Penal & Corr. Complex, 442 U.S. 1, 7 (1979). And, ordinarily, "[a] criminal defendant proved guilty after a fair trial does not have the same liberty interests as a free [person]." Dist. Att'y's Off. for Third Jud. Dist. v.

35

Osborne, 557 U.S. 52, 68 (2009).  But Graham was free, as of April 8, 2021, because the ODOC released her from state custody the same day the TCDC granted her postconviction relief, vacated her convictions and sentences, and dismissed the underlying criminal charges.  The Tenth Circuit has recognized, albeit in the context of inmates conditionally released from confinement to participate in a pre-parole program, that "[a] liberty interest inherent in the Due Process Clause arises upon an inmate's release from confinement."  Boutwell v. Keating, 399 F.3d 1203, 1212 (10th Cir. 2005)); see also Harper v. Young, 64 F.3d 563, 566 (10th Cir. 1995) (concluding that "the dispositive characteristic that marks the point at which the Due Process Clause itself implies a liberty interest . . . is the fact of release from incarceration").  Unlike an inmate released from confinement to participate in pre-parole program who is subject to certain conditions and could be returned to prison on violation of those conditions, Harper, 64 F.3d at 566-67, Graham was unconditionally released from state custody because her convictions and sentences were vacated and the underlying criminal charges against her were dismissed.  See Dkt. # 8-7, at 1 ("[T]he Court vacates the convictions and dismisses the charges . . . because the State does not and did not have subject matter jurisdiction.").  Graham therefore had a liberty interest inherent in the Due Process Clause on April 8, 2021, when she was released from state custody.[18]

Graham also had a state-created liberty interest arising from the TCDC's April 8, 2021, order itself.  The TCDC found that Graham did not just have a hope or desire for postconviction relief, but that she was legally entitled to postconviction relief—and to release from state

_____

[18] To the extent Graham's release from state custody was conditional, it was conditioned only on the possibility that the state might obtain reversal of the TCDC's April 8, 2021, order through a timely postconviction appeal.  But, as previously discussed, the state waived its statutory right to appeal.

custody—because Graham demonstrated, under the facts (Graham is Indian and committed crimes in Indian country) and the law existing at the time the TCDC filed its written order (McGirt and Bosse I), that the state lacked authority to prosecute Graham for crimes she committed in Indian country.  See OKLA. STAT. tit. 22, § 1085 ("If the court finds in favor of the applicant, it shall vacate and set aside the judgment and sentence and discharge or resentence him, or grant a new trial, or correct or modify the judgment and sentence as may appear appropriate.  The court shall enter any supplementary orders as to rearraignment, retrial, custody, bail, discharge, or other matters that may be necessary or proper.").  And, as Graham argues, state law created a substantial and legitimate expectation that the TCDC's final judgment granting postconviction relief would remain final absent a timely postconviction appeal by the state.  Dkt. # 1, at 15-17; see OKLA. STAT. tit. 22, § 1084 (2022) (providing that state district court's written order granting or denying postconviction relief "is a final judgment"); OKLA. STAT. tit. 22, § 1087 (providing that "[a] final judgment" in a postconviction proceeding "may be appealed to the Court of Criminal Appeals on petition in error filed either by the applicant or the state within thirty (30) days from the entry of the judgment" and further providing that, "[u]pon motion of either party on filing of notice of intent to appeal, within ten (10) days of entering the judgment, the district court may stay the execution of the judgment pending disposition on appeal."); Weatherford, 13 P.3d at 987-89 (discussing § 1087 and explaining that "[t]his statute granting the right of post-conviction appeal conditions the right upon the appeal being commenced within thirty days.  Thus if a party desires to invoke the appellate jurisdiction of this Court over post-conviction proceedings, he must do so within the time mandated by the Legislature"); State v. Barnes, 952 P.2d 1001, 1003 (Okla. Crim. App. 1997) ("Appeals, especially appeals by the State, are only required and allowed if specifically provided for by statute.  Failure to follow the express provisions and steps necessary to perfect an

appeal results in the waiver of the right to appeal and the dismissal of the appeal." (internal citations omitted); Rule 5.2(C)(1), Rules of the Oklahoma Court of Criminal Appeals, Title 22, Ch. 18, App. (2022) (requiring party to file notice of appeal within twenty days from the date the order granting or denying postconviction relief is filed and providing that "[t]he filing of the Notice of Post-Conviction Appeal in the District Court is jurisdictional and failure to timely file constitutes waiver of the right to appeal").[19]

Second, the OCCA arbitrarily disregarded the crushing weight of the state law and its own procedural rules governing postconviction review and capriciously rested its conclusion that the TCDC had authority to vacate the April 8, 2021, order granting postconviction relief on the demonstrably false premise that the April 8, 2021, order was "unauthorized by law."[20]   As a reminder, the majority determined that the TCDC's April 8, 2021, order was "unauthorized under

---

[19] Tellingly, even the OCCA questioned "whether any legal theory or basis gives the district courts power to reacquire jurisdiction in these post-conviction cases after their original orders granting postconviction relief were not appealed by the State within the statutory time period for appealing such orders."  Dkt. # 1-1, at 70.

[20] This Court cannot and does not second-guess the OCCA's determination that, under Oklahoma law, a state district court "retain[s] jurisdiction to vacate or modify its previous order granting post-conviction relief" if the order granting relief "was unauthorized under Oklahoma law," even when the state has waived its statutory right to appeal. Dkt. # 1-1, at 6-7.  But even accepting the majority's view that state law permits state district courts to retain jurisdiction to correct "erroneous" or "unauthorized" final judgments in postconviction proceedings absent a timely postconviction appeal, the Court finds that it was both arbitrary and fundamentally unfair arbitrary for the majority to apply that determination under the unique facts of Graham's case while the majority wholly ignored the weight of all other state law and state procedural rules that militated against permitting the state to seek reversal of a final judgment in a postconviction proceeding through a motion that does not exist under state law.  See Cummings, 506 F.3d at 1237 ("In rare circumstances, a determination of state law can be so arbitrary or capricious as to constitute an independent due process violation.").

Oklahoma law" because:  (1) the TCDC relied on the OCCA's "misdirection" in <u>Bosse I</u>; and (2) the TCDC's application of <u>McGirt</u>'s holding to Graham's convictions that were final before <u>McGirt</u> was decided was contrary to <u>Wallace</u>'s holding.  Dkt. # 1-1, at 6-7.  But, as previously discussed, <u>Bosse I</u> was an authoritative decision on April 7, 2021, when the mandate issued, and the TCDC could rely on that decision on April 8, 2021, one day before the OCCA recalled the mandate.  <u>See</u> Rule 3.13(B), <u>Rules of the Oklahoma Court of Criminal Appeals</u>, Title 22, Ch. 18, App. (2022) (providing that "official versions of the published decisions of the [OCCA]" "will become official and may be used as authority, when the mandate in the matter has issued and/or upon placement of the Court's official seal at the beginning of the decision when filed with the Clerk of this Court").  And, in its response to Graham's petition for writ of prohibition, the state effectively conceded that the TCDC properly relied on <u>Bosse I</u> to grant postconviction relief.  In the section of its response addressing why it did not pursue a postconviction appeal to challenge the April 8, 2021, order, the state explained:

> On March 11, in <u>Bosse</u>, 2021 OK CR 3, ¶¶ 20-22, the OCCA, in a unanimous 5-0 opinion, directly rejected the exact same procedural bar arguments raised by the State in [Graham's] case.  The OCCA explained that issues of subject-matter jurisdiction may be raised at any time.  <u>See id.</u>  Since the OCCA placed its official seal on its decision in <u>Bosse</u>, 2021 OK CR 3 and published this decision on the Oklahoma State Courts Network, this decision was official and could be used as authority at that time pursuant to Rule 3.13B, <u>Rules of the Oklahoma Court of Criminal Appeals</u>, Title 22, Ch. 18, App. (2021) ("decisions will become official, and may be used as authority, when the mandate in the matter has issued and/*or* upon placement of the Court's official seal at the beginning of the decision when filed with the Clerk of this Court") (emphasis added).

Dkt. # 8-10, at 14.  In that same vein, the state repeatedly emphasized that, given the OCCA's decision in <u>Bosse I</u>, the state "did not have a valid basis for appeal."  <u>Id.</u> at 5, 13, 15 n.6; <u>see also id.</u> at 16 ("None of the filings or OCCA decisions in the <u>Bosse</u> case, issued during the State's thirty-day time period for appeal in this case, provided any signal to the State that the OCCA's

39

support for its unanimous holdings in the <u>Bosse</u> decision was weakening or hat the State had any valid basis for appeal of the District Court's April 8, 2021 Order during that time period.").  Thus, the majority arbitrarily disregarded facts squarely placed before it by both parties demonstrating that on April 8, 2021—the singular day that the <u>Bosse I</u> decision was a published and mandated OCCA decision that could be relied on as authority—the TCDC applied existing law (<u>McGirt</u> and <u>Bosse I</u>) to the undisputed facts (Graham is Indian and committed crimes in Indian country) and, as authorized by OKLA. STAT. tit. 22, § 1085, the TCDC "vacate[d] the convictions and dismisse[d] the charges" against Graham "because the [s]tate does not and did not have subject matter jurisdiction" to convict Graham.  <u>Id.</u> at 5.  And faulting the TCDC for failing to apply <u>Wallace</u> four months before it was issued, particularly when <u>Wallace</u>'s reasoning directly contradicted the OCCA's statements in <u>Bosse I</u>, is even more arbitrary than faulting the TCDC for applying <u>Bosse I</u> in accordance with the OCCA's own procedural rules.

Based on the foregoing, the Court concludes that Graham is in state custody in violation of her Fourteenth Amendment right to due process, under the reinstated judgment and sentence entered against her in Tulsa County District Court Case No. CF-2007-5987, and should be granted federal habeas relief.

## VII.

Having determined that Graham is entitled to federal habeas relief, the only matter left to consider is the appropriate remedy. "Federal courts are authorized under 28 U.S.C. § 2243 to 'dispose of [a habeas corpus petition] as law and justice require' " and thus have "broad discretion to craft appropriate habeas relief."  <u>Clayton v. Jones</u>, 700 F.3d 435, 443 (10th Cir. 2012); <u>see also</u> <u>Burton v. Johnson</u>, 975 F.2d 690, 693 (10th Cir. 1992) (noting that a federal court 'possesses power

to grant *any form of relief necessary* to satisfy the requirement of justice' " (emphasis in original) (quoting Levy v. Dillon, 415 F.2d 1263, 1265 (10th Cir. 1969))).

As previously discussed, the TCDC found, and the record supports, that the state improperly exercised criminal jurisdiction over Graham's prosecution for crimes she committed in Indian country.  This Court thus finds that the appropriate remedy is to grant the petition for writ of habeas corpus and issue an unconditional writ:  (1) setting aside the original and reinstated judgments and sentences entered against Graham, in Tulsa County District Court Case No. CF-2007-5987; (2) barring retrial in state court on the underlying charges, and (3) directing respondent Tamika White to immediately release Graham from state custody.  See Capps v. Sullivan, 13 F.3d 350, 352 (10th Cir. 1993) (noting that the decision to grant a writ of habeas corpus "does not generally bar a retrial of the petitioner on the charges underlying his defective conviction" but recognizing that "barring a new trial is a permissible form of judgment" and, in some cases, "is necessary to protect the purpose of habeas corpus jurisdiction when the error forming the basis for the relief cannot be corrected in further proceedings"); see also Brian R. Means, Federal Habeas Manual § 13:10 (2020) (citing Solem v. Bartlett, 465 U.S. 463 (1984), for the proposition that "[a] petitioner in custody pursuant to a judgment issued by a court that lacked jurisdiction over him is entitled to the issuance of an unconditional writ").

## VIII.

**IT IS THEREFORE ORDERED** that the petition for writ of habeas corpus (Dkt. # 1) is **granted**, the original and reinstated judgments and sentences entered against Graham in Tulsa County District Court Case No. CF-2007-5987 **are invalid and are hereby set aside**, and any retrial in state court on the underlying charges in that case is **barred**.

**IT IS FURTHER ORDERED** that respondent Tamika White shall **immediately release** Kimberly Graham, ODOC # 597059, from state custody.  No later than 14 days after entry of this opinion and order, or on or before **July, 6, 2023**, counsel for respondent shall **file written notice** of compliance with the writ.

**IT IS FURTHER ORDERED** that a separate judgment shall be entered in this matter.

**DATED** this 22nd day of June, 2023.

CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE

42