## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **KIMBERLY GRAHAM**, | ) |
| | ) |
| **Petitioner,** | ) |
| | ) |
| v. | )  Case No. 23-CV-0164-CVE-SH |
| | ) |
| **TAMIKA WHITE,** | ) |
| | ) |
| **Respondent.** | ) |

### MOTION FOR STAY AND BRIEF IN SUPPORT

Comes now Respondent, Tamika White, by and through the Attorney General of Oklahoma, and moves for a stay of this Court's Judgment entered on June 22, 2023. Dkt. # 15. This Court granted Petitioner an unconditional writ of habeas corpus after this Court found that her Fourteenth Amendment right to due process was violated by the reinstatement of her convictions. Dkt. # 14. This Court ordered Petitioner's immediate release and held that she may not be re-prosecuted in state court. Dkt. # 14. Per this Court's order, Petitioner was released on June 22, 2023. This stay motion thus includes a request that this Court order Respondent to reacquire custody of Petitioner.

Respondent requests this stay to preserve the *status quo* as Respondent seeks review of this Court's ruling, and not for purposes of unnecessary delay or prejudice to Petitioner. Respectfully, during such stay, Respondent will argue to the appellate court that, *inter alia*, Petitioner's claim that the trial court's reinstatement of her convictions violated due process was not cognizable and the opinion being appealed did not properly apply the dictates of 28 U.S.C. § 2254(d), which produced an incorrect outcome. Under federal law, Petitioner was not entitled to habeas relief and her petition should have been denied.

In support of this Motion, Respondent shows the following:

1. Petitioner objects to this request.

2. Respondent's Notice of Appeal to the United States Court of Appeals for the Tenth Circuit was filed on June 23, 2023. Dkt. # 16.

3. Respondent submits that due to the circumstances and facts of this case, as discussed below, there is a substantial likelihood of success of Respondent's appeal on the merits.

4. As explained more fully below, if this Court were not to order Petitioner's reincarceration, irreparable injury will result to Respondent; however, if a stay is granted, Petitioner will not be prejudiced, and the public interest will be served. *See Hinton v. Braunskill*, 481 U.S. 770, 777 (1987) (discussing factors that should be considered in determining whether a stay should be granted).

## **ARGUMENT AND AUTHORITY**

Rule 23 of the Federal Rules of Appellate Procedure provides that a decision ordering the release of a prisoner pending review of a decision may be stayed by the justice or judge rendering the decision, by the court of appeals, or the United States Supreme Court. *See also* 10th Cir. R. 8.1. Such a stay is also allowable under the provisions of Rule 8 of the Federal Rules of Appellate Procedure. Pursuant to Tenth Circuit Rule 8.1. this Court considers four (4) factors from a moving party: "(1) the likelihood of success on appeal; (2) the threat of irreparable harm if the stay is not granted; (3) the absence of harm to opposing parties if the stay is granted; and (4) any risk of harm to the public interest." *Spain v. Podrebarac*, 68 F.3d 1246, 1247 (10th Cir. 1995). *See also Hilton v. Braunskill*, 481 U.S. 770, 776 (1987) (same). In *Hilton*, the Supreme Court stated that the court issuing a stay may also consider, *inter alia*, the State's interest in continuing custody pending a final determination on appeal. *Hilton*, 481 U.S. at 777. In this case, all relevant factors weigh in

favor of a stay of this Court's Judgment pending the outcome of Respondent's appeal to the Court of Appeals for the Tenth Circuit.

### I.     There is a likelihood of success on appeal.

Respondent respectfully contends that the Judgment of this Court contains errors that should be reviewed by the Court of Appeals for the Tenth Circuit, and that those errors are serious enough to warrant reversal of this Court's grant of habeas corpus. The discussion below is not an exhaustive accounting of reasons why Respondent contends that Petitioner's petition for writ of habeas corpus should have been denied. However, it is sufficient to demonstrate the likelihood of success on appeal.

**A. Petitioner's claim is not cognizable because it asks this Federal Court to grant habeas relief based on alleged errors of state law.**

Respondent's response to the habeas petition pointed out that,

> Aside from four fleeting references to federal cases, addressed below, Petitioner relies exclusively on arguments that the OCCA violated state law. Petitioner is foreclosed from obtaining a writ of habeas corpus based upon alleged errors of state law. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions"); *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990) (a claim that the state court misapplied its own precedent cannot be the basis for a writ of habeas corpus); *(Donald) Grant v. Royal*, 886 F.3d 874, 948 n. 25 (10th Cir. 2018) ("we are at a loss to understand how any purported inconsistency in the OCCA's *own (state law) precedent* produced by the OCCA's ruling in Mr. Grant's case is germane to our inquiry under AEDPA—where the unalloyed legal concern is clearly established *federal* law") (emphasis adopted); *Sellers v. Ward*, 135 F.3d 1333, 1339 (10th Cir. 1998) (assuming the OCCA misconstrued a state statute, "the error is one of state law not cognizable in habeas corpus because 'federal habeas corpus relief does not lie for errors of state law'") (quoting *Jeffers*, 497 U.S. at 780).

Dkt. # 8, pp. 7-8.

This Court disagreed. While acknowledging that "some of Graham's arguments appear to ask this Court to reexamine" the Oklahoma Court of Criminal Appeals' ("OCCA") state law determinations which cannot be reviewed in federal court, this Court stated that

> Graham primarily argues that the state courts' failure to follow state law and state procedural rules, under the unique facts of her case, deprived her of a liberty interest protected by the Fourteenth Amendment. And whether a state's application of its own laws comport[s] with the Fourteenth Amendment's Due Process Clause is a matter of federal law, not state law.

Dkt. # 14, pp. 25-26.

Respondent will argue on appeal that

> the OCCA held that the trial court's ruling was in compliance with state law. Doc. 1-1 at 6-7. This Court is bound by the OCCA's interpretation of state law. *See Estelle*, 502 U.S. at 67-68; *Jeffers*, 497 U.S. at 780. That ends any possible due process inquiry under *Hicks [v. Oklahoma*, 447 U.S. 343 (1980)]. *See Ross v. Oklahoma*, 487 U.S. 81, 91 (1988) (the petitioner "received all that Oklahoma law allowed him, and therefore his due process challenge fails"); *Johnston v. Luebbers*, 288 F.3d 1048, 1053 n.3 (8th Cir. 2002) (denying relief under *Hicks* where the state's highest court held the trial court's ruling did not violate state law).

Dkt. # 8, pp. 10-11.

Contrary to this authority, this Court ultimately granted habeas relief based on its finding that

> the OCCA arbitrarily disregarded the crushing weight of the state law and its own procedural rules governing postconviction review and capriciously rested its conclusion that the TCDC had authority to vacate the April 8, 2021, order granting postconviction relief on the demonstrably false premise that the April 8, 2021, order was "unauthorized by law."[20]
>
> [20] This Court cannot and does not second-guess the OCCA's determination that, under Oklahoma law, a state district court "retain[s] jurisdiction to vacate or modify its previous order granting post-conviction relief" if the order granting relief "was unauthorized under Oklahoma law," even when the state has waived its statutory

4

> right to appeal. Dkt. # 1-1, at 6-7. But even accepting the majority's view that state law permits state district courts to retain jurisdiction to correct "erroneous" or "unauthorized" final judgments in postconviction proceedings absent a timely postconviction appeal, the Court finds that it was both arbitrary and fundamentally unfair arbitrary [sic] for the majority to apply that determination under the unique facts of Graham's case while the majority wholly ignored the weight of all other state law and state procedural rules that militated against permitting the state to seek reversal of a final judgment in a postconviction proceeding through a motion that does not exist under state law. See Cummings[ v. Sirmons], 506 F.3d [1211,] 1237 [(10th Cir. 2007)] ("In rare circumstances, a determination of state law can be so arbitrary and capricious as to constitute an independent due process violation.").

Dkt. # 14, p. 38 (first alteration made by this Court).

Respectfully, this Court's ultimate determination that the OCCA violated due process is based on its disagreement with the OCCA's determination that the Tulsa County District Court ("TCDC") did not violate state law. Pursuant to *Ross*, *Hicks* is not implicated when a habeas petitioner has received all that he or she is entitled to under state law.[1]

The OCCA held that state law was not violated in Petitioner's case. Dkt. # 1-1, pp. 6-7. Yet, in order to receive the writ of prohibition she requested, Petitioner was required to

---

[1] In *Cummings*, the Tenth Circuit rejected the petitioner's claim that the state court had violated due process "particularly in light of the fact that the United States Supreme Court has never recognized" the right asserted by the petitioner, i.e., that accomplice testimony be corroborated. *Cummings*, 506 F.3d at 1237-38. The same is true here. *See* Dkt. # , p. . The dicta in *Cummings* regarding the possibility that a state law determination may violate due process originates from similar dicta in the Supreme Court's decision in *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990). *Id*. at 1237. Importantly, the statement in *Lewis* **did not** indicate that a state court's **determination of what state law is** might violate due process. Rather, the position of the petitioner was that the state court "simply misapplied its own aggravating circumstance to the facts of [the petitioner's] case." *Lewis*, 497 U.S. at 780. And the Supreme Court rejected that claim because "respect for a state court's findings of fact and application of its own law counsels against the sort of *de novo* review undertaken by" the state court, and instead requires only that there was sufficient evidence from which a reasonable factfinder, viewing the evidence in the light most favorable to the state, could have found the aggravating circumstance proven. *Id*. at 780-81. Neither *Cummings* nor *Lewis* involved a federal court second-guessing a state court's determination of the meaning of state law, or what state law requires.

demonstrate that the TCDC exercised its power in a way that "is unauthorized by law." Dkt. # 1-1, p. 6. The OCCA explicitly denied that premise. The court held that, "Because the convictions in this matter were final before the July 9, 2020, decision in *McGirt [v. Oklahoma*, 140 S. Ct. 2452 (2020)], the holding in *McGirt* does not apply and the District Court's order vacating those convictions was unauthorized by law. *See [State ex rel.] Matloff [v. Wallace]*, 2021 OK CR 21, ¶ 40, 497 P.3d [686,] 694." Dkt. # 1-1, p. 6. *See also* Dkt. # 1-1, p. 7 ("Because dismissal of Petitioner's judgment and sentence **was unauthorized under Oklahoma law** . . . ." (emphasis added)); Dkt. # 1-1, p. 7 ("Petitioner fails to show the District Court's reinstatement of her convictions constituted an exercise of judicial power **that is unauthorized by law** . . . ."). The court further cited state law authority to support its holding:

> The erroneous judicial release by the District Court of a prisoner is subject to prompt correction by the court. *See Harris v. District Court of Oklahoma County*, 1988 OK CR 26, ¶ 4, 750 P.2d 1129, 1130-31. This is so even when the unauthorized dismissal occurs in the context of an order granting post-conviction relief **which is not timely appealed by the State**. *See [Application of] Anderson*, 1990 OK CR 82, ¶¶ 3, 5, 803 P.2d [1160,] 1162.

Dkt. # 1-1, pp. 6-7 (emphasis added).

The OCCA is the final arbiter of state law. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions"). Therefore, its holdings that the TCDC did not violate state law and that the TCDC's order granting post-conviction relief was unauthorized by state law are binding on this Court. Because this Court's conclusion that *Hicks* was violated rested on its disagreement with the OCCA's interpretation of state law, *see* Dkt. # 14, p. 38 (finding the OCCA's decision rested on "the demonstrably false premise that the April 8, 2021, order was 'unauthorized by law'"), this Court erred.

6

### B. Petitioner's claim is not cognizable because she is not challenging her judgment and sentence, but rather the state courts' rulings on post-conviction matters.

Respondent will also argue on appeal that

> Petitioner's claim is further not cognizable because it attacks state post-conviction proceedings and not the constitutionality of her original judgment and sentence. *Id.* ("The first hurdle Petitioner must overcome is that his principal constitutional argument does not revolve about trial error but about matters that occurred subsequently. . . . Moreover, because the constitutional error he raises focuses only on the State's post-conviction remedy and not the judgment which provides the basis for his incarceration, it states no cognizable federal habeas claim."); *Steele v. Young*, 11 F.3d 1518, 1524 (10th Cir. 1993) ("Steele's claim challenging the Oklahoma post-conviction procedures on their face and as applied to him would fail to state a federal constitutional claim cognizable in a federal habeas proceeding"); *Word v. Lord*, 648 F.3d 129, 131 (2d Cir. 2011) ("We deny Word's application because her new petition, which purports to assert a due process challenge to New York's collateral post-conviction proceedings, does not state a claim that is cognizable under federal habeas review."); *Kirby v. Dutton*, 794 F.2d 245, 247 (6th Cir. 1986) ("[O]ther circuits . . . have concluded . . . that the writ is not the proper means by which prisoners should challenge errors or deficiencies in state post-conviction proceedings such as Kirby claims here because the claims address collateral matters and not the underlying state conviction giving rise to the prisoner's incarceration.") (collecting cases). Petitioner's claim is that the state court violated her due process rights on post-conviction in reinstating her convictions, not that her convictions themselves violate due process—such a claim is simply not reviewable on habeas.

Dkt. # 8, pp. 8-9.

In rejecting Respondent's argument, this Court agreed with Respondent in principle, but nonetheless focused solely on the facts of this case:

> But none of these cases [cited by Respondent] involves the unique facts presented in this case. Graham does not allege that the OCCA misapplied a state procedural rule to conclude that she waived a specific postconviction claim (*Sellers*); that she was denied postconviction review based on the OCCA's application of a procedural rule (*Word*); that she was deprived of the effective assistance of postconviction counsel or was denied substitute

7

>postconviction counsel (Kirby); or that the OCCA systematically deprives state prisoners of due process in postconviction proceedings (Steele). Rather, Graham alleges that the state violated her right to due process by depriving her of a liberty interest—her freedom—without due process because the TCDC applied existing law to grant her application for postconviction relief and discharge her from state custody, as authorized by state law, and the state courts subsequently disregarded, or arbitrarily applied, state law by permitting the state to effectively obtain a reversal of the lawful and final grant of postconviction relief when the state did not perfect a postconviction appeal and when the state's request to "vacate" the lawful, final postconviction judgment, "re-convict[]" her, and recommit her to state prison four months after her release from state custody was based on the newly-announced Wallace rule. Dkt. # 1, at 7, 11-19. Even assuming the Fourteenth Amendment violation Graham alleges here could be construed as arising from a state postconviction proceeding,[15] Graham's present confinement under the reinstated judgment and sentence that was entered against her in April 2023 is the direct result of the alleged due process violation. Because Graham's present detention in state custody resulted from the claimed violation of her Fourteenth Amendment right to due process, her claim "is just as close to the court of habeas corpus as an attack on [her] conviction[s], for it goes directly to the constitutionality of [her] physical confinement itself and seeks . . . immediate release from that confinement." Preiser v. Rodriguez, 411 U.S. 475, 489 (1973) [additional citations omitted].
>
>[15] This is a generous assumption. As previously discussed, the TCDC, Graham's counsel, and at least one OCCA judge agreed that the proceedings related to the state's motion to vacate the TCDC's final judgment could not be properly characterized as proceedings under the Oklahoma Post-Conviction Procedure Act. [Citations omitted].

Dkt. # 14, pp. 29-30 (alterations added).

Respectfully, the fact that a federal court may not review a court's "post-conviction" proceedings is not dependent on what those proceedings are called, or whether the State's motion to vacate was proper under Oklahoma's Post-Conviction Procedure Act. *See Sellers*, 135 F.3d at 1339 ("The first hurdle Petitioner must overcome is that his principle constitutional argument does not revolve about trial error but about matters that occurred subsequently."). Nor does the fact that

Petitioner would not be confined if not for these "post-conviction" proceedings authorize habeas relief. *See Sellers*, 135 F.3d at 1339 ("Thus, although Petitioner has presented substantial credible evidence that now and at the time of his trial he suffers from a mental illness that may have bearing **upon his factual innocence** of the crimes for which he stands convicted, he does not cross the threshold barrier to federal habeas corpus" because he challenged "the State's post-conviction remedy.") (emphasis added). While the cases cited by Respondent each involved a different factual scenario, what they all had in common was that the petitioners argued that if not for the allegedly faulty state post-conviction procedures, they would not be confined. This is the same argument made by Petitioner in this case.

Finally, *Preiser* does not support Petitioner's requested relief. *Preiser* involved a Civil Rights Act lawsuit by state prisoners who believed they were unjustly deprived of good-conduct-time credits. *Preiser*, 411 U.S. at 476. The Tenth Circuit has held, in the post-conviction context, that when a habeas petitioner "focuses only on the State's post-conviction remedy and not the judgment which provides the basis for his incarceration, it states no cognizable federal habeas claim". *Sellers*, 135 F.3d at 1339. And as quoted above, the court held that Sellers "has presented substantial credible evidence that now and at the time of his trial he suffers from a mental illness that may have bearing **upon his factual innocence** of the crimes for which he stands convicted, [yet] he does not cross the threshold barrier to federal habeas corpus" because he challenged "the State's post-conviction remedy." *Id*. If *Sellers*' constitutional claim had merit, he would have been entitled to immediate release (as he was allegedly innocent). Yet, the Tenth Circuit held it could not review his claim. *Sellers*, and not *Preiser*, is binding in this case.

### C. This Court erred in *sua sponte* disregarding 28 U.S.C. § 2254(d).

In his habeas petition, Petitioner did not argue that the OCCA's decision was not entitled to deference under 28 U.S.C. § 2254(d). *See* Dkt. # 1; Dkt. # 8, p. 9 & n.7 (noting Petitioner alleged the OCCA's decision violated § 2254(d)(2), arguing this Court should hold that Petitioner had waived any challenge under § 2254(d)(1), and noting that Petitioner did not allege the OCCA failed to address his *Hicks* claim on the merits). This Court held that, because the OCCA did not "acknowledge[], much less evaluate[], the substance of Graham's Fourteenth Amendment claim," § 2254(d) did not apply. Dkt. # 14, p. 33 (alterations by this Court). Respondent will argue on appeal that this Court's decision is in error for two reasons.

*First*, this Court should not have *sua sponte* disregarded § 2254(d) when Petitioner did not so request. *See Andrew v. White*, 62 F.4th 1299, 1341 (10th Cir. 2023) ("Ms. Andrew's change in tactics—to seek relief under § 2254(d)(2) when she altogether failed to do so before the district court—presents a clear-cut waiver issue"); *Reedy v. Werholtz*, 660 F.3d 1270, 1274 (10th Cir. 2011) ("If Plaintiffs were pro se, we would construe their pleadings liberally. . . . But they are represented by counsel, and we expect attorneys appearing before this court to state the issues on appeal expressly and clearly, with theories adequately identified and supported with proper argument."); *(Donald) Grant v. Royal*, 886 F.3d 874, 914 (10th Cir. 2018) ("Mr. Grant would be hard-pressed to satisfy [28 U.S.C. § 2254(e)(1)] here because he makes no effort to take up the cudgel by making specific arguments under § 2254(e)(1)'s framework to rebut the presumption of correctness."); *Hancock v. Trammell*, 798 F.3d 1002, 1011 (10th Cir. 2015) ("In federal district court, Mr. Hancock did not question the existence of an adjudication on the merits. Because Mr. Hancock did not raise this issue in federal district court, we consider the argument 'forfeited.'"); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) ("we do not believe it is the proper function

of the district court to assume the role of advocate" even "**for the pro se litigant**") (emphasis added). Petitioner bears the burden of overcoming the presumption that state courts decide the merits of all claims that are properly before them. *Johnson v. Williams*, 568 U.S. 289, 301-02 (2013) ("the presumption that the federal claim was adjudicated on the merits may be rebutted—**either by the habeas petitioner** (for the purpose of showing that the claim should be considered on the merits by the federal court *de novo*) **or by the State** (for the purpose of showing that the federal claim should be regarded as procedurally defaulted)) (emphasis added). Petitioner made no attempt to rebut the presumption, thus, § 2254(d) must apply.

*Second*, this Court erred in finding the presumption rebutted (even assuming a court may do so *sua sponte*). Perhaps most importantly, the fact that this Court raised the issue *sua sponte* alone establishes that the presumption was not rebutted. *See Johnson*, 568 U.S. at 306 ("The possibility that the [state court] had simply overlooked Williams' Sixth Amendment claim apparently did not occur to anyone until that issue was raised by two judges during the oral argument in the Ninth Circuit. . . . Williams presumably knows her case better than anyone else, and the fact that she does not appear to have thought that there was an oversight makes such a mistake most improbable.").

Further, in *Johnson*, the Court relied upon its earlier decision in *Richter* holding

> that § 2254(d) "does not require a state court to give reasons before its decisions can be deemed to have been 'adjudicated on the merits.'" Rather, we explained, "[w]hen a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary."

*Johnson*, 568 U.S. at 298 (alteration by the *Johnson* court) (quoting *Harrington v. Richter*, 562 U.S. 86, 99 (2011)).

11

The Court then held that

> Our reasoning in *Richter* points clearly to the answer to the question presented in the case at hand. Although *Richter* itself concerned a state-court order that did not address *any* of the defendant's claims, we see no reason why the *Richter* presumption should not also apply when a state-court opinion addresses some but not all of a defendant's claims.

*Id*.

In *Johnson*, the petitioner challenged the dismissal of a juror on both state and federal grounds without "clearly distinguish[ing] between these two lines of authority." *Id*. at 295. The state court "did not expressly acknowledge that Williams had invoked a federal basis for her argument." *Id*. at 296. The Ninth Circuit Court of Appeals found it "'obvious'" that the state court "'overlooked or disregarded'" the federal claim. *Id*. at 297. The Supreme Court stated that, "[w]hile it is preferable for an appellate court in a criminal case to list all of the arguments that the court recognizes as having been properly presented . . . federal courts have no authority to impose mandatory opinion-writing standards on state court . . . ." *Id*. at 300. Thus, "[w]hen a state court rejects a federal claim without expressly addressing that claim, a federal habeas court must presume that the federal claim was adjudicated on the merits[.]" *Id*. at 301.

The Court provided examples of when the presumption might be rebutted such as when the state standard is less protective than the federal standard. *Id*. Interestingly, the other two examples provided by the Court—where the defendant makes no effort to develop a federal claim or mentions the federal claim in passing—would result in a procedural bar rather than *de novo* merits review. *Id*. at 301-02 & n.3. The bottom line is that "the *Richter* presumption is a strong one that

may be rebutted only in unusual circumstances" and "the evidence [must] lead[] very clearly to the conclusion" that the state court did not adjudicate the claim. *Id*. at 302.[2]

The presumption is not rebutted here. As in *Johnson*, the OCCA did not mention the federal claim. Yet, that alone is not sufficient. Petitioner's petition for writ of prohibition claimed the OCCA violated state law, and therefore violated *Hicks*. Doc. 1-1, p. 53. The Supreme Court considered such situations when it held that a state court should be presumed to have adjudicated all federal claims presented to it on the merits: "First, there are circumstances in which a line of state precedent is viewed as fully incorporating a related federal constitutional right. . . . In this situation, a state appellate court may regard its discussion of the state precedent as sufficient to cover a claim based on the related federal right." *Johnson*, 568 U.S. at 298-99.

As explained above, Petitioner's due process claim depends entirely on whether she received all she was due under state law. Accordingly, the *Richter*/*Johnson* presumption has not been rebutted. *Cf. Johnson*, 568 U.S. at 306 (holding that the petitioner in *Johnson* had not rebutted the presumption because "Williams treated her state and federal claims as interchangeable, and it is hardly surprising that the state courts did so as well").

**D. This Court's *de novo* review was both incorrect and *Teague*-barred.**

Finally, Respondent will argue that this Court's application of *Hicks* was incorrect for two reasons.[3] *First*, as explained in subsection A, this Court is bound by the OCCA's determination

---

[2] While the Court also indicated that a state court's "sheer inadvertence" might rebut the presumption, it gave no indication as to what lower courts should look for when attempting to decide whether a state court inadvertently overlooked a federal claim. *Johnson*, 568 U.S. at 302-03. However, the opinion makes clear that the failure to mention the federal claim is not sufficient.
[3] As stated above, the arguments presented in this motion are offered to make the requisite showing of a substantial likelihood of success on the merits and are not intended to be all-encompassing.

that the TCDC's order granting post-conviction relief was unauthorized by law. As Petitioner received all that she was entitled to under state law, *Hicks* was not violated.

*Second*, even on *de novo* review, federal courts are bound by the *Teague* anti-retroactivity rule.[4] *Smith v. Sharp*, 935 F.3d 1064, 1083-84 (10th Cir. 2019). Under *Teague*, "new constitutional rules of criminal procedure will not be applicable to those cases which have become final before the new rules are announced." *Teague v. Lane*, 489 U.S. 288, 310 (1989); *see Edwards v. Vannoy*, 141 S. Ct. 1547, 1560 (2021) (eliminating the exception to this rule for watershed rules of criminal procedure). The *Teague* anti-retroactivity rule applies not just to newly announced rules, but also where a "prior decision is applied in a novel setting, thereby extending the precedent." *Stringer v. Black*, 503 U.S. 222, 228 (1992). "The interests in finality, predictability, and comity underlying our new rule jurisprudence may be undermined to an equal degree by the invocation of a rule that was not dictated by precedent as by the application of an old rule in a manner that was not dictated by precedent." *Id.* The phrase "dictated by precedent," in turn, requires that a case's result be "apparent to all reasonable jurists." *Lambrix v. Singletary*, 520 U.S. 518, 527-28 (1997).

Here, after *sua sponte* finding a lack of merits adjudication and stripping the OCCA of § 2254(d) deference, this Court did not acknowledge *Teague* or its limitation on federal habeas review. Furthermore, it is clear that this Court applied *Hicks* to a novel setting in a manner not dictated by precedent. This Court repeatedly stressed the "unique facts" of Petitioner's case thus eliminating any doubt as to whether this case involved a "novel setting" for application of *Hicks*.

---

[4] Respondent is making this argument at the first available opportunity, as Petitioner did not argue that § 2254(d) did not apply. Respondent thus limited her response to whether *Hicks* provides clearly established federal law in this context. Respondent reasserts and preserves all previous arguments in that respect.

14

Dkt. # 14, pp. 26, 28, 31 n. 16, 35, 38 n. 20. This Court announced its holding, *i.e.*, "that the state courts deprived Graham of an unconditional liberty interest—namely, her freedom from state custody—by applying state law in a way that was both fundamentally unfair and arbitrary in the constitutional sense," with a "see" citation to a circuit court case and a "cf." cite to a Supreme Court case. Dkt. # 14, p. 35. *See Lambrix*, 520 U.S. at 528-29 (result not dictated by precedent where Supreme Court opinion offered only a single citation, preceded by "cf." in support of its central conclusion); *Soffar v. Cockrell*, 300 F.3d 588, 598 (5th Cir. 2002) (en banc) ("In order to qualify as existing, a rule must be dictated by Supreme Court precedent, not circuit court precedent." (collecting cases)). In other words, this Court's application of *Hicks* to Petitioner's case and finding relief was warranted would not have been apparent to all reasonable jurists at the time Petitioner's convictions became final (or even when the OCCA denied her petition for a writ of prohibition).

Respectfully, this Court then compounded its error by failing to ask whether the new rule it created in extending *Hicks* was procedural or substantive. Respondent submits that the rule is procedural, meaning Petitioner should not have received its retroactive benefit. *See Edwards*, 141 S. Ct. at 1562. While this Court described Petitioner's claim as one involving "substantive due process," Dkt. # 14, p. 35, the rule announced by this Court was plainly procedural.

Specifically, this Court did not dispute that Petitioner could have properly remained incarcerated had the TCDC initially denied her post-conviction relief or had the State pursued a timely post-conviction appeal upon the grant of relief. Rather, this Court concluded that the "unique procedural facts" of the case resulted in constitutional error—specifically, that "the state courts' failure to follow state law and state procedural rules, under the unique facts of her case, deprived her of a liberty interest protected by the Fourteenth Amendment." Dkt. # 14, pp. 26, 31

n. 16. Nothing about this novel extension of *Hicks* alters the range of conduct or the class of persons that the law punishes or prohibits a certain category of punishment for a class of defendants because of their status or offense, which are the hallmarks of a substantive rule. *See, e.g.*, *Schriro v. Summerlin*, 542 U.S. 348, 354 (2004) ("A decision that modifies the elements of an offense is normally substantive . . . ."); *Lawrence v. Texas*, 539 U.S. 558, 578 (2003) (new rule that states cannot criminalize consensual sodomy between adults is substantive); *Miller v. Alabama*, 567 U.S. 460, 470 (2012) (new rule that states cannot sentence juvenile offenders to life without parole sentences for non-homicide offenses is substantive).

Put differently, this Court never suggested that the state courts could not have applied *Wallace* to bar Petitioner from *McGirt* relief—only that the state courts did so in a way here that was so improper under state procedural law and the circumstances to be arbitrary, fundamentally unfair, and unconstitutional. In effect, this Court extended *Hicks* to announce a new procedural rule, one that should not have been retroactively applied to Petitioner under *Teague* and *Edwards*.

II. **The State will suffer irreparable injury if the stay is not granted, and granting the stay will serve the public interest and not substantially prejudice Petitioner.**

Respondent further satisfies the other factors to be considered in deciding this motion. In the context of deciding whether a habeas petitioner should be released or remain incarcerated pending the State's appeal of the grant of habeas relief, the Supreme Court has said that, "[s]ince the traditional stay factors contemplate individualized judgments in each case, the formula cannot be reduced to a set of rigid rules." *Hilton v. Braunskill*, 481 U.S. 770, 777 (1987). However, the Court "agreed that the possibility of flight should be taken into consideration"; "that, if the State establishes that there is a risk that the prisoner will pose a danger to the public if released, the court may take that factor into consideration"; and that "[t]he State's interest in continuing custody and

rehabilitation pending a final determination of the case on appeal is also a factor to be considered." *Id*. This final factor "will be strongest where the remaining portion of the sentence to be served is long, and weakest where there is little of the sentence remaining to be served." *Id.*

Here, as to irreparable harm to the State and public interest, irreparable injury will result if Petitioner is not reincarcerated. Although the Court of Appeals will duly docket Respondent's appeal, there is no likelihood that the briefing schedule for this appeal will be completed within the fourteen day timeframe within which this Court has ordered Respondent to file a notice of compliance. Specifically applying the *Hilton* factors, as to flight risk, Petitioner has been released without any sort of bond.[5] As to the danger to the public, Petitioner previously drove while intoxicated and killed *five* individuals; her guilt is not in dispute. Furthermore, recidivism among DUI offenders is well-established. DeMichele, et al, *DWI Recidivism: Risk Implications for Community Supervision*, Federal Probation: A Journal of Correctional Philosophy and Practice, Vol. 75:3 ("Estimates suggest the majority of all DWI episodes are committed by a small group of chronic offenders.")[6].

Finally, "[t]he State's interest in continuing custody and rehabilitation pending a final determination of the case" is "strongest" where, as here, "the remaining portion of the sentence to be served is long." *Hilton*, 481 U.S. at 777. Petitioner has, at a minimum, more than ninety years left to serve of her total 107-year sentence.

---

[5] Respondent understands that Petitioner is subject to criminal charges filed by the Muscogee Nation, and that she was released on bond therefrom. However, Respondent does not know the terms and conditions of that bond. In particular, as relevant to danger to the public, Respondent does not know whether Petitioner's bond with the Nation prohibits her from using intoxicating substances.

[6] Available at https://www.uscourts.gov/sites/default/files/75_3_3_0.pdf.

As to any injury to Petitioner from a stay, in general, "a successful habeas petitioner is in a considerably less favorable position than a pretrial arrestee . . . to challenge his continued detention pending appeal. Unlike a pretrial arrestee, a state habeas petitioner has been adjudged guilty beyond a reasonable doubt by a judge or jury, and this adjudication of guilt has been upheld by the appellate courts of the State." *Id.* at 779. Petitioner here is even less favorably situated to complain about her continued incarceration because, as previously discussed, this Court found constitutional infirmity in her post-conviction proceedings, *not* as to her conviction and sentence or trial. At bottom, given the robust showing by Respondent of a strong likelihood of success on the merits, as well as Respondent's demonstration that the second and fourth factors weigh in favor of a stay, a stay is warranted notwithstanding any potential injury to Petitioner. *See id.* at 777-78 ("The interest of the habeas petitioner in release pending appeal, always substantial, will be strongest where the factors mentioned in the preceding paragraph are weakest. . . . Where the State establishes that it has a strong likelihood of success on appeal, . . . continued custody is permissible if the second and fourth factors in the traditional stay analysis militate against release.").

## **CONCLUSION**

For this Court to issue a stay, Respondent need not show that she will be meritorious on appeal. Instead, Respondent must only demonstrate that there are "questions going to the merits so serious, substantial, difficult and doubtful, as to make the issues ripe for litigation and deserving of more deliberate investigation." *McClendon v. City of Albuquerque*, 79 F.3d 1014, 1020 (10th Cir. 1996) (internal quotations omitted). That has been established here. Respondent prays that her Motion for Stay be granted and custody of Petitioner reacquired.

Respectfully submitted,

**GENTNER F. DRUMMOND**
**ATTORNEY GENERAL OF OKLAHOMA**

s/ **JENNIFER L. CRABB**
**JENNIFER L. CRABB, OBA # 20546**
**ASSISTANT ATTORNEY GENERAL**
313 N.E. 21st Street
Oklahoma City, Oklahoma 73105
(405) 521-3921         FAX (405) 522-4534
Service email: fhc.docket@oag.ok.gov

**ATTORNEYS FOR RESPONDENT**

## CERTIFICATE OF SERVICE

**X**     I hereby certify that on the on the 23rd day of June, 2023, I electronically transmitted the attached document to the Clerk of Court using the ECF System and also transmitted a Notice of Electronic Filing to the following ECF registrant(s):

Richard O'Carroll
troc@cox.net
Counsel for Petitioner

s/ JENNIFER L. CRABB