## UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **KIMBERLY GRAHAM,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 23-CV-0164-CVE-SH** |
| | ) | |
| **TAMIKA WHITE, Warden,** | ) | |
| | ) | |
| **Respondent.** | ) | |

### OPINION AND ORDER

Before the Court is respondent Tamika White's motion for stay filed June 23, 2023 (Dkt. # 17). In an opinion and order filed June 22, 2023, the Court granted petitioner Kimberly Graham an unconditional writ of habeas corpus and directed White to immediately release Graham from state custody. Dkt. # 14. The Court entered judgment against White that same day. Dkt. # 15. White filed a notice of appeal on June 23, 2023, and the United States Court of Appeals for the Tenth Circuit docketed the appeal on June 26, 2023, assigning Case No. 23-5069. Dkt. ## 16, 20. On June 27, 2023, White filed a notice of compliance with the writ, advising the Court that the Oklahoma Department of Corrections ("ODOC") released Graham from custody on June 22, 2023. Dkt. # 21. Pursuant to Federal Rule of Appellate Procedure 8(a)(1)(A) and 23(c), White moves the Court to stay its judgment pending the outcome of the appeal and "request[s] that this Court order [White] to reacquire custody of [Graham]." Dkt. # 17, at 1. Graham opposes the motion. Dkt. # 24. For the following reasons, the Court denies White's motion for stay.

### I.

In 2009, a Tulsa County, Oklahoma jury convicted Graham as to five counts of first-degree manslaughter and one count of leaving the scene of a fatality accident, and the trial court ordered

Graham to serve 107 years in state prison.[1]  The Oklahoma Court of Criminal Appeals ("OCCA")

affirmed Graham's judgment and sentence on direct appeal in August 2011.  Graham filed an

application for postconviction relief in November 2012 and supplemented that application in

August 2017.

On April 8, 2021, the Tulsa County District Court ("TCDC") granted Graham's application

for postconviction relief.  In the written order, the TCDC stated,

> [U]pon review of the file and being fully advised of the premises, [the court] hereby
> FINDS that the Petitioner is Indian as defined by law and that allegations against
> her occurred on Indian Land.  The State stipulated in its October 2, 2020, Response,
> pg. 3, that "1) Petitioner is a citizen of the Cherokee Nation with a citizenship date
> of September 12, 1996, and 2) the offenses for which Petitioner was convicted were
> committed within the boundaries of the Muscogee (Creek) Nation."  Proof of same
> has also been provided in Ex's. A and B of Petitioner's Supplement filed 8/30/17.
>
> Accordingly, pursuant to McGirt v. Oklahoma, 140 S. Ct. 2452 (2020) and
> Bosse v. State, 20[21] OK CR 3, ___ P.3d ___, slip *18, the Court vacates the
> convictions and dismisses the charges in the above styled and numbered cause
> because the State does not and did not have subject matter jurisdiction.

Dkt. # 1-2, at 5; see OKLA. STAT. tit. 22, § 1085 (2022) ("If the court finds in favor of the applicant,

it shall vacate and set aside the judgment and sentence and discharge or resentence him, or grant a

new trial, or correct or modify the judgment and sentence as may appear appropriate.  The court

shall enter any supplementary orders as to rearraignment, retrial, custody, bail, discharge, or other

matters that may be necessary or proper.").  That same day, the ODOC released Graham from state

custody.  The State of Oklahoma ("the state"), acting through the Tulsa County District Attorney,

did not seek a stay of the TCDC's April 8, 2021, order granting postconviction relief and did not

---

[1] The truncated factual background in this order is drawn from the more detailed factual
background provided in the opinion and order filed June 22, 2023.  Dkt. # 14, at 1-21.

perfect a postconviction appeal because the state recognized that it had no legal basis to challenge the TCDC's decision.

Over four months later, on August 31, 2021, the state filed a motion asking the TCDC to: (1) vacate the April 8, 2021, order granting postconviction relief; (2) reinstate Graham's previously vacated convictions and sentences; and (3) remand Graham to state custody. The state argued that the TCDC's April 8, 2021, order granting postconviction relief "was in error" because the OCCA held, on August 12, 2021, that "McGirt v. Oklahoma announced a new rule of criminal procedure which [the OCCA] decline[s] to apply retroactively in a state post-conviction proceeding to void a final conviction." State ex rel. Matloff v. Wallace, 497 P.3d 686, 688-89 (Okla. Crim. App. 2021), cert. denied sub nom Parish v. Oklahoma, 142 S. Ct. 757 (2022) ("Wallace"). On August 31, 2021, relying on Wallace, the OCCA vacated its decision in Bosse I and withdrew its published opinion in Bosse I. See Dkt. # 14, at 5-21; see also Bosse v. State, 499 P.3d 771, 775 (Okla. Crim. App. Oct. 7, 2021), referred to as Bosse II in this Court's opinion and order granting the unconditional writ (Dkt. # 14, passim).

On November 18, 2021, the TCDC granted the state's motion and ordered Graham to be returned to state custody "to serve out the remainder of her terms of confinement," but immediately stayed that order so that Graham could seek further review in the OCCA. Dkt. # 8-9, at 4. The next day, Graham petitioned the OCCA for a writ of prohibition. In a 3-2 split decision filed on April 18, 2023, the OCCA denied Graham's petition for a writ of prohibition. Dkt. # 1-1, at 4-41.

Two days later, Graham "surrendered to the custody of the [ODOC] in the front lobby of the David L. Moss Criminal Justice Center" ("the Tulsa County Jail"). Dkt. # 4, at 2. At that time, "[t]here was no active warrant for her arrest, nor any new charges for Graham to be detained, arrested or held in Tulsa County." Id. at 3. Rather, Graham was detained pursuant to an Order of

Commitment for punishment issued by the TCDC, directing that she be transported to state prison to continue serving her original sentences.  Id.

Graham petitioned this Court for a writ of habeas corpus on April 25, 2023.  The next day, the TCDC filed a "re-instated judgment and sentence," dated April 20, 2023, reinstating Graham's previously vacated convictions and sentences.  Dkt. # 8-14.  Graham was incarcerated at the Mabel Bassett Correctional Center, in McLoud, Oklahoma, until June 22, 2023, when this Court granted Graham an unconditional writ and directed White to immediately release Graham from state custody.  Dkt. # 4, at 57; Dkt. # 21.  As previously stated, White filed a notice of appeal and the instant motion for stay on June 23, 2023.

## II.

White seeks a stay of this Court's judgment and asks this Court to permit the state to "reacquire custody" of Graham pending the outcome of the appeal.  Dkt. # 17, at 1.  When a district court grants a petition for writ of habeas corpus and the respondent appeals that decision, Federal Rule of Appellate Procedure 23(c) provides that "the habeas petitioner shall be released from custody 'unless the court or justice or judge rendering the decision, or the court of appeals or the Supreme Court, or a judge or justice of either court shall otherwise order.'"  Hilton v. Braunskill, 481 U.S. 770, 772 (1987) (quoting Fed. R. App. P. 23(c)).  Rule 23(c) thus establishes a presumption that a petitioner granted habeas relief will be released pending the appeal.  Id. at 774.  To determine whether a party moving for a stay has overcome that presumption, a court ordinarily considers traditional factors governing requests for stays in civil proceedings:  (1) whether the movant has made a strong showing that she is likely to succeed on the merits; (2) whether the movant will suffer irreparable harm absent a stay; (3) whether granting a stay will substantially injure the other parties interested in the proceeding; and (4) whether granting a stay serves the

public interest.  Id. at 776.  The court also considers whether the petitioner is a flight risk or will pose a threat to the public upon release, and the state's interest in maintaining custody and rehabilitating the petitioner pending appeal.  Id. at 777.

Preliminarily, Graham contends, in part, that White's request for a stay is moot because White released Graham, effectively executing the judgment, before seeking a stay of that judgment.  Dkt. # 24, at 1-5; see Graddick v. Newman, 453 U.S. 928, 936 (1981) ("Ordinary linguistic usage suggests that an order, once executed, cannot be 'stayed.'").  But the question of whether compliance with a judgment directing immediate release of a state prisoner pursuant to a writ of habeas corpus moots a subsequent request for a stay of that judgment is debatable.  See id. at 943-45 (Rehnquist, J.) (stating disagreement with proposition that release of several prisoners from confinement through a writ of habeas corpus rendered moot a subsequent request for a stay).  Graham also argues that Rule 23(c) and the Braunskill factors seem to contemplate a choice between release or continued custody without any mention of the option proposed by White to "reacquire custody" of an already released prisoner.  Dkt. # 24, at 1-5.  The Court does not necessarily disagree with Graham's view on this latter point.  The Court nonetheless finds it appropriate to consider White's request for a stay by applying Rule 23(c)'s presumption in favor of release and considering the Braunskill factors.

Beginning with the first of the four factors, White offers four arguments to support her view that the first factor is satisfied because she is likely to succeed on the merits on appeal.  None is persuasive.  White's first two arguments are that Graham's Fourteenth Amendment due process claim is not cognizable on federal habeas review (1) because Graham merely alleges an error of state law and (2) because Graham is challenging "the state courts' rulings on post-conviction matters."  Dkt. # 17, at 3-9.  The Court carefully considered and rejected these arguments in ruling

on the habeas petition and is not persuaded that either argument shows that White is likely to succeed on appeal.

The third argument is that this Court erroneously determined that 28 U.S.C. § 2254(d) did not govern its review of the OCCA's decision. Id. at 10-13. First, White argues that the Court should have applied § 2254(d)'s deferential standard of review because Graham did not argue that the OCCA did not adjudicate the merits of her Fourteenth Amendment due process claim and Graham "made no attempt to rebut" the rebuttable presumption established by Johnson v. Williams, 568 U.S. 289 (2013). Id. at 10-11. But "the correct standard of review under AEDPA is not waivable. It is . . . an unavoidable legal question [the court] must ask, and answer, in every case." Gardner v. Galetka, 568 F.3d 862, 879 (10th Cir. 2009); see also Grant v. Royal, 886 F.3d 874, 967 (10th Cir. 2018) (Moritz, J., dissenting) (explaining that "Gardner simply applies to the habeas context the more general rule that the court, not the parties, must determine the standard of review, and therefore, it cannot be waived" (internal quotation marks omitted) (quoting United States v. Fonseca, 744 F.3d 674, 682 (10th Cir. 2014))). Thus, regardless of whether Graham failed to ask this Court to review her federal claim de novo, that omission did not require this Court to ignore the OCCA's obvious failure to adjudicate the merits of that claim and apply § 2254(d). See Johnson, 568 U.S. at 302 ("The language of 28 U.S.C. § 2254(d) makes it clear that this provision applies only when a federal claim was "adjudicated *on the merits* in State court." (emphasis in original)); Gardner, 568 F.3d at 879 ("It is one thing to allow parties to forfeit claims, defenses, or lines of argument; it would be quite another to allow parties to stipulate or bind [the court] to application of an incorrect legal standard, contrary to the congressional purpose."). Next, White argues that this Court erroneously determined that the Johnson presumption was rebutted in this case and suggests that this Court found it rebutted solely because the OCCA did not explicitly

address the claim.  Dkt. # 17, at 11-13.  White further suggests that the circumstances of this case do not fit neatly within one of the "examples of when the presumption might be rebutted" as described in <u>Johnson</u>.  <u>Id.</u> at 12-13.  But examples are just that, and the <u>Johnson</u> Court did not purport to provide lower courts with an exclusive, exhaustive checklist of when the presumption of a merits adjudication might be rebutted.  The point of <u>Johnson</u>'s discussion of examples was to explain why it was rejecting the warden's position in that case that habeas courts must always presume a state court has adjudicated the merits of a claim, regardless of the circumstances of the case.  568 U.S. at 301-03.  As the <u>Johnson</u> Court explained, the argument for an irrebuttable presumption "goes too far" because an irrebuttable presumption does not "follow inexorably from AEDPA's deferential architecture."  <u>Id.</u> at 301, 303.  Rather, AEDPA requires deference to a state court's decision only when the state court has adjudicated the merits of a federal claim and when, as in this case, "the evidence leads very clearly to the conclusion that a federal claim was

inadvertently overlooked in state court," no deference is due. Id. at 303.[2]  White's third argument

thus does not make a strong showing that she is likely to succeed on appeal.

_____

[2] Moreover, even accepting White's position that this Court should have applied § 2254(d), this Court ultimately would have reviewed the Fourteenth Amendment claim de novo because Graham persuasively argued that the OCCA's presumed adjudication of the merits of the federal claim resulted in a decision that is based on an unreasonable determination of the facts presented in state court within the meaning of 28 U.S.C. § 2254(d)(2). Dkt. # 1, at 14-15, 19-23. Under § 2254(d)(2), a court "must defer to the state court's factual determinations so long as 'reasonable minds reviewing the record might disagree about the finding in question.'"  Smith v. Duckworth, 824 F.3d 1233, 1241 (quoting Brumfield v. Cain, 576 U.S. 305, 314 (2015)). But a petitioner can avoid deferential review under § 2254(d)(2) if the petitioner shows "that 'the state courts plainly misapprehend[ed] or misstate[d] the record in making their findings, and the misapprehension goes to a material factual issue that is central to petitioner's claim, that misapprehension can fatally undermine the fact-finding process, rendering the resulting factual finding unreasonable.'"  Id. (alterations in original) (quoting Ryder ex rel. Ryder v. Warrior, 810 F.3d 724, 739 (10th Cir. 2016)).  Here, the OCCA reasoned that the TCDC's April 8, 2021, order was "unauthorized by Oklahoma law" because it relied on the OCCA's decision in Bosse I and failed to apply the OCCA's not-yet-released decision in Wallace.  Dkt. # 1-1, at 6-7.  Presumably, the OCCA contemporaneously reasoned that because the TCDC's April 8, 2021, order was "unauthorized under Oklahoma law," Graham failed to establish a due process violation arising from the TCDC's November 18, 2021, order reinstating her original judgment and sentence after that judgment had been vacated on the ground that it was obtained in violation of Graham's right to due process because the state had no criminal jurisdiction to prosecute her and after the underlying charges against her had been dismissed.  As Graham argued, however, the OCCA majority either misapprehended, or intentionally disregarded, the fact that Bosse I "was the Law of the Land in Oklahoma the day [her] case was dismissed and she was released."  Dkt. # 1, at 14, 19-20.  As discussed in this Court's opinion and order, and as the state conceded on the record in state court proceedings, Bosse I was a published and mandated decision on April 8, 2021, and the OCCA's own procedural rules authorized the TCDC to rely on that decision to grant postconviction relief. Dkt. # 14, at 38-40.  The OCCA's decision that Graham was not denied due process is necessarily based on the OCCA's unreasonable factual determination that, on April 8, 2021, the TCDC could not rely on the OCCA's decision in Bosse I.  Thus, even assuming the OCCA's decision should have been reviewed under § 2254(d), the Court would have determined that de novo review was appropriate, and the Court would have reached the same conclusion that Graham was entitled to federal habeas relief.

The fourth argument is that this Court incorrectly applied <u>Hicks v. Oklahoma</u>, 447 U.S. 343 (1980), for two reasons. Dkt. # 17, at 13-16. First, White argues that because the OCCA determined "that the TCDC's order granting postconviction relief was unauthorized by law," Graham "received all that she was entitled to under state law" and "<u>Hicks</u> was not violated." <u>Id.</u> at 14. As the motion suggests, this appears to simply reframe White's first argument that Graham's Fourteenth Amendment due process claim is not a cognizable habeas claim because, in White's view, Graham alleges only an error of state law. <u>Id.</u> But as this Court explained in its opinion and order "a state prisoner may seek federal habeas relief 'if a state law decision is so fundamentally unfair that it implicates due process.'" <u>See</u> Dkt. # 14, at 25-27 (quoting <u>Leatherwood v. Allbaugh</u>, 861 F.3d 1034, 1043 (10th Cir. 2017)). Second, White argues that this Court announced a new procedural rule when it "applied <u>Hicks</u> to a novel setting in a manner not dictated by precedent" and failed to "acknowledge" that the "anti-retroactivity rule" of <u>Teague v. Lane</u>, 489 U.S. 288 (1989), precluded this Court from applying the "new procedural rule" to grant habeas relief to Graham. <u>Id.</u> at 14-16. To the extent this Court understands White's argument, that argument appears to rest on a fundamental misunderstanding of <u>Teague</u>. Under <u>Teague</u>, "a decision announcing a new rule of criminal procedure ordinarily does not apply retroactively on federal collateral review." <u>Edwards v. Vannoy</u>, 141 S. Ct. 1547, 1551 (2021). This is so because "applying 'constitutional rules not in existence at the time a conviction became final seriously undermines the principle of finality which is essential to the operation of our criminal justice system.'" <u>Id.</u> at 1554 (quoting <u>Teague</u>, 489 U.S. at 309). In other words, "the 'costs imposed upon the States by retroactive application of new rules of constitutional law on habeas corpus thus generally far outweigh the benefits of this application.'" <u>Id.</u> at 1555 (quoting <u>Sawyer v. Smith</u>,

497 U.S. 227, 242 (1990)).  Consequently, the Supreme Court "has repeatedly stated that new rules

of criminal procedure ordinarily do not apply retroactively on federal collateral review."  Id.  But

> Teague also made clear that a case does not "announce a new rule, [when] it '[is]
> merely an application of the principle that governed'" a prior decision to a different
> set of facts. 489 U.S., at 307, 109 S. Ct. 1060 (quoting Yates v. Aiken, 484 U.S.
> 211, 217, 108 S. Ct. 534, 98 L. Ed. 2d 546 (1988)).  As JUSTICE KENNEDY has
> explained, "[w]here the beginning point" of our analysis is a rule of "general
> application, a rule designed for the specific purpose of evaluating a myriad of
> factual contexts, it will be the infrequent case that yields a result so novel that it
> forges a new rule, one not dictated by precedent."  Wright v. West, 505 U.S. 277,
> 309, 112 S. Ct. 2482, 120 L. Ed. 2d 225 (1992) (concurring in judgment); see also
> Williams v. Taylor, 529 U.S. 362, 391, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000).
> Otherwise said, when all we do is apply a general standard to the kind of factual
> circumstances it was meant to address, we will rarely state a new rule for Teague
> purposes.

Chaidez v. United States, 568 U.S. 342, 347-48 (2013).  In short, Teague ordinarily bars retroactive

application on federal habeas review of Supreme Court decisions that interpret the Constitution in

a new way and that require state courts to apply new procedural rules in criminal cases regarding

"the manner of determining the defendant's culpability."  Edwards, 141 S. Ct. at 1562.  In this

case, the Court had no reason to consider Teague because Graham did not ask this Court to apply

a newly announced constitutional rule relating to criminal procedure that did not exist when her

convictions became final.  Rather, Graham raised, and this Court adjudicated, a Fourteenth

Amendment claim asserting that the state courts' application of state law to the unique facts of

Graham's case was arbitrary in the constitutional sense and fundamentally unfair and therefore

violated Graham's right to due process.  In doing so, the Court construed Graham's claim "as

asserting a substantive due process claim" and asked (1) whether Graham was deprived of a liberty

interest and (2) if so, whether the state acted arbitrarily in depriving her of that interest. Dkt. # 14,

at 34-35.  Contrary to White's apparent argument, this Court's application of general legal

principles to the facts of Graham's case did not announce a new rule at all much less a new

10

constitutional rule relating to criminal procedure that would have implicated the <u>Teague</u> rule. <u>Chaidez</u>, 568 U.S. at 347-48. For these reasons, White's fourth argument also fails to make a strong showing of success on the merits. Thus, the first of the four <u>Braunskill</u> factors does not weigh in favor of White's request for a stay.

And all other factors weigh heavily against White's request for a stay. As to the second factor, White asserts that "irreparable injury will result if [Graham] is not reincarcerated." Dkt. # 17, at 17. Specifically, White argues that "there is no likelihood that the briefing schedule for [White's] appeal will be completed within the fourteen day timeframe within which this Court has ordered [White] to file a notice of compliance." <u>Id.</u> It is unclear how White (or the state) would suffer any injury, much less an irreparable one, by being ordered to file a notice of compliance with the writ before an appellate briefing schedule is completed. In any event, the ODOC released Graham from custody on June 22, 2023, and White filed a notice of compliance on June 27, 2023. Dkt. # 21. The fact that Graham has been released from state custody is consistent with Rule 23(c)'s presumption of release pending appeal and neither the fact of her release nor the requirement that White file a notice of compliance within fourteen days of the judgment supports White's assertion of irreparable injury.

As to the third factor, White contends that Graham would not suffer "any injury" if the Court grants a stay and orders Graham reincarcerated. Dkt. # 17, at 18. White argues Graham is not "favorably situated to complain about her continued incarceration" because a Tulsa County jury found Graham guilty, the OCCA affirmed her judgment and sentence, and this Court did not find any "constitutional infirmity" in the trial that resulted in her original judgment and sentence. Dkt. # 17, at 18. The Court, however, finds that the harm to Graham from permitting the state to "reacquire custody" and "reincarcerate" her pending the outcome of the appeal would be

11

substantial. As a reminder, the TCDC vacated Graham's original judgment and sentence as unlawful, dismissed the underlying criminal charges, and released her from state custody because the state "does not and did not have" authority to prosecute Graham. And this Court invalidated the reinstated judgment and sentence and released Graham from state custody because the state violated her Fourteenth Amendment right to due process by applying its own law in a constitutionally arbitrary manner to reinstate the previously vacated invalid original judgment and sentence. Under these peculiar circumstances, the Court is firmly convinced that ordering White to "reacquire custody" of Graham pending the outcome of the appeal would cause Graham substantial injury. And, based on these same circumstances, the Court rejects White's assertion that the state has a strong interest "in continuing custody and rehabilitation" because Graham has "more than ninety years left to serve of her total 107-year sentence." Dkt. # 17, at 19. Given that the state first improperly exercised criminal jurisdiction over Graham, then unconstitutionally deprived her of the liberty she obtained through the TCDC's final judgment granting her request for postconviction relief by reinstating the invalid original judgment and sentence, the Court finds the state's interest, if any, in Graham's "continuing custody and rehabilitation" is negligible.

As to the fourth factor, White appears to contend that a stay would serve the public interest because Graham is a flight risk and poses a danger to the community. White asserts that Graham is a flight risk because she has been released without bond. Dkt. # 17, at 17. The Court disagrees. The TCDC released White without bond on April 8, 2021, when the TCDC vacated her convictions and sentences and dismissed the underlying criminal charges against her, and White surrendered, without incident, on April 20, 2023, when the TCDC remanded her to custody. So, after having been free from state custody for over two years, Graham presented herself at the Tulsa County Jail, as directed by the TCDC, so that she could be returned to the ODOC to continue serving what

White represents is "at a minimum, more than ninety years left to serve" of her reinstated sentences. Moreover, Graham is being prosecuted in the Muscogee (Creek) Nation District Court for the same conduct that resulted in her Tulsa County convictions and the tribal court has released her on a cash bond of $52,000. Dkt. # 24, at 5. Under these circumstances, Graham is not a flight risk. White also asserts that Graham poses a danger to the public because she "drove while intoxicated and killed five individuals," and "recidivism among DUI offenders is well-established." Dkt. # 17, at 17. The Court does not deny that Graham's conduct in 2007 resulted in horrific tragedy. Graham caused irreparable harm to her victims, the families and friends of her victims, and the community. But the question before this Court is whether permitting Graham to remain free from state custody pending the outcome of White's appeal exposes the public to danger. And the Court concludes the answer is no. As just discussed, the state released Graham from custody without bond in April 2021 and Graham was out of state custody until April 2023. Nothing in the instant motion indicates, or even suggests, that Graham committed any new driving offenses or otherwise created a danger to the public during that two-year period. White's reliance on Graham's past conduct and a general statement regarding recidivism among DUI offenders fails to demonstrate that Graham presently poses a danger to the public.[3]

Based on the foregoing, the Court concludes that White has not overcome Rule 23(c)'s presumption that Graham shall be released pending appeal and, further, that White has not identified any legal basis for this Court to order White to "reacquire custody" of Graham.

---

[3] Graham avers that she has not obtained a driver's license and that she has abstained from drinking alcohol since the accident. Dkt. # 24, at 5.

**IT IS THEREFORE ORDERED** that White's motion for stay filed June 23, 2023 (Dkt. # 17) is **denied**.

**DATED** this 30th day of June, 2023.

CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE

14